FARNHAM, Appellant, vs. SHERRY and another, Respondents.

*April 3 — April 17, 1888.*

*(1) Taxation: Public lands: Unauthorized cancellation of land-warrant after location: Withholding patent. (2) Suspension of entry: Filing of certificate. (3) Ejectment: Judgment.*

1. A military bounty land warrant was located on certain lands by one W. in 1857, and the usual certificate of such location was issued. In the same year the commissioner of pensions notified the commissioner of the general land office that said warrant and its assignment to W. were impeached as forgeries, and requested that the patent be withheld. The request was complied with, and no further action was taken until in June, 1863, when the commissioner of pensions assumed to cancel the warrant. The commissioner of the land office acquiesced in such cancellation, and withheld the patent until 1882, when, it having been decided by the secretary of the interior that the cancellation of the warrant was unauthorized, he caused the patent to be issued to W. The lands were sold in May, 1863, for nonpayment of the taxes assessed thereon in 1862. *Held,* that from the location of the warrant in 1857 until the tax sale in 1863 the entire equitable title to, and beneficial interest in, the land was in W., and hence that the land was taxable in 1862. *Calder v. Keegan,* 30 Wis. 127, distinguished.

2. Under ch. 105, Laws of 1861, providing that where entries of land had been suspended such lands should not be subject to taxation until such suspension was removed, the filing of a certificate of such suspension, as provided in sec. 3 of the act, was a condition precedent to the right of the owner to claim the benefit of the exemption.

3. A plaintiff in ejectment who established no title to the land cannot complain because the judgment awards to the defendants the possession of the whole of the land and not merely of that part to which they proved title.

APPEAL from the Circuit Court for *Wood* County.

Ejectment for 160 acres of land in Wood county. To establish her title to the land claimed the plaintiff put in evidence a patent therefor, dated December 20, 1882, issued by the United States to one Watkins, pursuant to a location thereon of a military bounty land warrant numbered 50,308; and also a quitclaim deed of the same land, dated December 24, 1883, executed by Watkins to her.

The defendants put in evidence two tax deeds of the land, executed in due form to one Samuel Hanson, and duly recorded,— one on the tax sale of 1863 for nonpayment of the taxes of 1862, executed and recorded in 1866; and the other on the tax sale of 1865 for nonpayment of the taxes of 1864, executed and recorded in 1869; and also mesne conveyances of the land, or some portion of it, from Hanson to defendants. The defendants further proved, on the trial, that on October 28, 1857, Watkins located the land warrant No. 50,308 on the land, and the local government land officers issued the usual certificate of such location, and transmitted the warrant to the land department at Washington.

November 21, 1857, the commissioner of pensions notified the commissioner of the general land office that such warrant, and the assignment thereof to Watkins, had been impeached as being forged documents, and requested the latter to withhold the patent thereon. June 15, 1863, the commissioner of pensions, by an indorsement on the warrant

to that effect, assumed to cancel the land warrant on the ground that the same, together with the assignment thereof to Watkins, were forgeries, and he thereupon returned the warrant to the commissioner of the general land office, with notice of such cancellation.

No formal action was taken by the commissioner of the general land office in the matter, but it appears, by correspondence had in 1865 and 1868 between the commissioner and the agents of Watkins, that the former acquiesced in such cancellation, and withheld the patent. At the same time, however, he informed such agents that Watkins might locate another land warrant on the land, or enter the same for cash at the government price. Watkins did not avail himself of this privilege, and nothing further was done in the matter until December, 1882, when, under a decision of the secretary of the interior to the effect that the commissioner of pensions had no power to cancel the land warrant, the commissioner of the land office caused the patent to be issued to Watkins for the land. This is the patent introduced in evidence by the plaintiff, as above stated. A letter by the commissioner to Watkins, dated December 5, 1882, contains this passage: " This location was suspended from patent on account of objections presented by the commissioner of pensions against the issue of warrant and assignment thereof. Upon a present review of the case, and in accordance with the rulings of the honorable secretary of the interior, I find that no valid reason exists against the satisfaction of the case in question. I have therefore directed that as soon as practicable the said location, which is intact upon the plats of this office, should be passed for patent, and the same, when issued, will be transmitted for delivery to the register of the land office at Wausau, Wis., unless you previously file the duplicate certificate of location in this office; in which event the patent will be sent directly to your address."

Upon the above facts, the substance of which is stated in the findings of fact by the court (a jury having been waived), the court found, in effect, that Watkins was the owner of a taxable interest in the land in 1862, when it was assessed and taxed, and in May, 1863, when it was sold for nonpayment of such taxes, and that the tax deed executed to Hanson in 1866, on the certificates of the sale of 1863, vested in him a valid title to the land, available to the defendants to defeat this action. No mention is made in the findings of the tax deed of 1869. Judgment was thereupon ordered and entered for the defendants pursuant to such findings. The plaintiff appeals from the judgment.

For the appellant there were briefs by *Neal Brown* and *L. A. Pradt*, attorneys, and *Silverthorn, Hurley, Ryan & Jones*, of counsel, and the cause was argued orally by *Mr. M. A. Hurley* and *Mr. Brown*.

*Geo. L. Williams*, for the respondents, to the point that Watkins' right to a patent for all the lands in question became complete in 1857, and hence the equitable title was then fully vested in him so as to subject said lands to taxation in the following year, cited *Wis. Cent. R. Co. v. Price Co.* 64 Wis. 588, 594; *Ross v. Outagamie Co.* 12 id. 26; *Cornelius v. Kessel*, 58 id. 237; *Tucker v. Ferguson*, 22 Wall. 527; *Wheeler v. Merriman*, 30 Minn. 379; *Whitney v. Gunderson*, 31 Wis. 359; *Hall v. Dowling*, 18 Cal. 619; *People v. Shearer*, 30 id. 645; *Witherspoon v. Duncan*, 4 Wall. 210.

LYON, J. The learned counsel for the plaintiff with much ingenuity of argument maintain that the judgment of the circuit court herein is erroneous because (1) on general principles of law the absolute title of the land in controversy was in the United States in 1862, when the tax was levied thereon which is the basis of the tax deed of 1866, and hence the land was not then taxable; and (2) if plaintiff then owned an interest in the land otherwise taxable, the same

was exempt from taxation by ch. 105, Laws of 1861. An additional objection to a full recovery by defendants is founded upon an alleged want of title in them of the whole 160 acres under mesne conveyances from Hanson. These propositions will be considered in their order.

I. Laying out of view for the present the effect of ch. 105, Laws of 1861, the first question to be determined is, Had Watkins a taxable interest in the land in 1862? In considering this question it must be borne in mind that Watkins, the plaintiff's grantor, made an effectual entry or location of the land in 1857, paid therefor, and received the usual certificates thereof from the proper local land officers of the government. That this vested in Watkins the entire equitable title to the land and beneficial interest therein, the United States holding only the naked legal title in trust for him, is settled in this state beyond controversy. Of course Watkins' interest was taxable.

What happened before 1862 that divested Watkins' title, and thus relieved the land from liability to taxation? Nothing whatever except that in 1857 the commissioner of pensions without authority notified the commissioner of the general land office that the validity of the land warrant No. 50,308, located on the land in controversy, was impeached, and requested the latter to withhold the patent therefor. The commissioner of the land office complied with such request, and no further action was taken in the matter until June 15, 1863. It requires no argument to show that these acts did not and could not affect the title of Watkins to the land. At most they merely delayed him in obtaining the legal title which the United States then held in trust for him, and which in its own good time it conveyed to him.

The case of *Wis. Cent. R. Co. v. Price Co.* 64 Wis. 579, in principle is identical with the present case. The railroad company was entitled to patents from the United States

for certain specific lands. The government land officers refused to issue such patents, claiming that the railroad company was not entitled thereto, yet the equitable title was held to be in the railroad company, and the lands were held taxable although patents were refused. See, also, the recent cases of *Wis. Cent. R. Co. v. Wis. River Land Co.*, *ante*, p. 94; *Spiess v. Neuberg*, *ante*, p. 279. The question under consideration was fully discussed in those cases by Mr. Justice CASSODAY, and numerous authorities cited bearing upon it. The opinions and judgments therein are conclusive of the question, and relieve us from the necessity of further discussion thereof. It is only necessary to add a few observations upon the case of *Calder v. Keegan*, 30 Wis. 127, upon which counsel for plaintiff seem to rely. That was a case of suspended entry under a spurious land warrant. After the suspension, the person making the entry purchased the land and paid for it in cash, as Watkins had the privilege of doing in the present case. Such purchase was held to be a new entry, the purchaser taking no title whatever under the first entry because the warrant was spurious. A tax levied intermediate the two entries was held void. Clearly the case is not in point here.

We hold that, from the location of the land by Watkins in 1857 down to the sale thereof in 1863 for nonpayment of taxes, the entire equitable title to, and beneficial interest in, the land in controversy was in Watkins, by virtue of his entry, location, and purchase thereof, and hence that the same was taxable in 1862 unless exempted from taxation by the act of 1861.

II. We are now to determine whether ch. 105, Laws of 1861, exempted the land from taxation in 1862. It is provided in sec. 1 of the act that in all cases where entries of land, made at any of the United States land offices within this state, have been suspended by authority of the secretary of the interior, the commissioner of the general land

office, or the department of the interior, except in certain cases not material here, such land shall not be subject to taxation until such suspension is removed and the title confirmed to the original applicant. By the terms of the act such exemption is limited to two years from the date of the passage of the act, which was March 25, 1861. Sec. 2 provides that in all cases where lands situated as stated in sec. 1 have been sold for taxes while the entry thereof was suspended, all tax certificates of sale and tax deeds issued in pursuance of such sale for taxes are null and void. Sec. 3 is as follows: "All persons claiming relief under the provisions of this act, where the entries of land were suspended at the date of the passage hereof, shall, within one year from the passage of this act, cause to be filed in the office of the clerk of the board of supervisors of the county in which such suspended lands are located a certificate of such suspension from the general land office or from the local land office where such entries were attempted to be made; and all persons claiming such relief on account of the suspension of entries hereafter made shall file a like notice with the said clerk within one year from the time of such suspension."

It is very doubtful, to say the least, whether the entry or location of the land in controversy was ever suspended by any authority specified in sec. 1. But, assuming for the purposes of the case that such entry or location was so suspended, the suspension occurred November 21, 1857, when the commissioner of pensions requested the commissioner of the land office to withhold the patent, which request was complied with. This occurred before the passage of the act of 1861. Sec. 3 of the act required Watkins to file the certificate specified therein with the clerk of the board of supervisors within one year from the passage of the act, that is to say, by March 25, 1862. There is no proof in the case that this was done. We think the provisions of sec. 3

are mandatory, and that it was essential for Watkins to file such certificate within the prescribed time in order to avail himself of the provisions of secs. 1 and 2. Doubtless the legislature foresaw that, without some such provision as that contained in sec. 3, the taxing officers would or might be entirely in the dark as to what suspensions had been made, without adequate means of ascertaining the fact. The result would naturally be that lands exempt from taxation under the act would continue to be assessed and taxed and sold for nonpayment of taxes. Parties would invest their money on the faith of the validity of the taxes, perhaps make valuable improvements upon the land believing they had a good title thereto, when the original owner at his own convenience would bring forth from the archives of the land office at Washington evidence of a suspension of the entry, and thus defeat the title of the purchaser. In view of these and other considerations, it must be held that the filing of the certificate pursuant to sec. 3 is a condition precedent to the right of the original owner to claim the benefit of the exemption of sec. 1. Hence we conclude that the act of 1861 does not aid the claim of the plaintiff in this action.

III. It is claimed on behalf of the plaintiff that the defendants established on the trial a title under Hanson to but an undivided one-half of the land in controversy, and that it was error to give them judgment for the possession of the whole. It is elementary that the plaintiff in ejectment recovers (if at all) upon the strength of his own title, and not upon the weakness of that of his adversary. The plaintiff failed to establish any title to the land, and was necessarily defeated in the action no matter who was the owner. The land was entirely vacant and unimproved. Yet, although it was not in the actual possession of any one, the statute required the plaintiff to allege in her complaint that the defendants unlawfully withheld the posses-

sion thereof from her. R. S. sec. 3077. It is this constructive possession, and this only, that the judgment awards to the defendants. Whether the judgment in this respect is regular or irregular is quite immaterial, for it can result in no harm to the plaintiff.

Upon the whole case we conclude that the judgment of the circuit court is correct and should be affirmed.

*By the Court.*— Judgment affirmed.