[No. 11422.   Department Two.   December 5, 1913.]

JOSEPH HAUMESSER, *Respondent*, v. CHEHALIS COUNTY,
*Appellant*.[1]

TAXATION—PUBLIC LANDS—PENDING PATENT—RECEIVER'S CERTIFI-
CATE—SUBSEQUENT CONTEST—EFFECT. The status of a receiver's final
certificate in favor of a homestead ·entryman is not affected by the
filing of adverse proceedings against the entry, which merely delays
issuance of the patent; and, under Rem. & Bal. Code, § 9140, pro-
viding that the assessor must assess public lands after a certificate
has issued therefor notwithstanding the patent has not issued, the
land contract does not exempt the land from taxation pending the
hearing, especially where the proceedings were dismissed, the land
remained in the settler's possession and patent finally issued.

Appeal from a judgment of the superior court for Chehalis
county, Irwin, J., entered May 21, 1913, in favor of the
plaintiff, upon an agreed statement of facts, in an action to
restrain the collection of taxes.   Reversed.

*J. E. Stewart, A. Emerson Cross,* and *O. M. Nelson,* for
appellant.

*W. H. Abel,* for respondent.

MOUNT, J.—This action was brought by the plaintiff to
restrain Chehalis county from collecting taxes for the years
1911 and 1912 upon certain lands owned· by him, upon the
ground that the taxes levied· for those years were void.

The cause was tried· upon an agreed statement of facts.
The court concluded, as a matter of law, that the taxes for
1911 and 1912 levied upon the plaintiff's lands were void.
A judgment was accordingly entered.   The defendant, Che-
halis county, has appealed.

The stipulated facts are as follows·:   On June 24, 1905,·
Joseph Haumesser made homestead application for the lands .
in question.   Thereafter, on October 27, 1909, Mr. Hau-
messer made final proof and received a final certificate.   The

[1]Reported in 136 Pac. 1141.

lands were assessed for the year 1910, and the taxes for that year were paid by Mr. Haumesser to Chehalis county. On October 1, 1910, the United States government, by its duly authorized officers, filed an adverse proceeding against the entry and final proof of Mr. Haumesser, alleging that he had never established and maintained a residence on the lands and that he had never cultivated them. In March, 1913, after investigation and additional proofs, the adverse proceeding was dismissed and the lands were clear listed for patent. Thereafter, on April 15, 1913, a United States patent was issued to Mr. Haumesser conveying the lands to him.

The controlling question in the case is, Did the filing of the adverse proceeding against the entry and final proof exempt the land from taxation pending the hearing? It is argued by the respondent that the issuance of final certificate was only *prima facie* evidence of compliance with the homestead law; that this certificate was subject to attack and additional proofs by the land department of the United States.

There can be no question that the land department of the government had a clear right to contest the regularity of the proofs, or the sufficiency thereof, after final certificate had been issued. In *Michigan Land & Lumber Co. v. Rust*, 168 U. S. 589, the supreme court of the United States, upon this question, said:

"It is, of course, not pretended that when an equitable title has passed the land department has power to arbitrarily destroy that equitable title. It has jurisdiction, however, after proper notice to the party claiming such equitable title, and upon a hearing, to determine the question whether or not such title had passed. *Cornelius v. Kessel*, 128 U. S. 456; *Orchard v. Alexander*, 157 U. S. 372, 383; *Parsons v. Venzke*, 164 U. S. 89. In other words, the power of the department to inquire into the extent and validity of the rights claimed against the government does not cease until the legal title has passed. 'A warrant and survey authorize the proprietor of them to demand the legal title, but do not, in themselves, constitute a legal title. Until the consummation

of the title by a grant, the person who acquires an equity holds a right subject to examination.' *Miller v. Kerr*, 7 Wheat. 1, 6. After the issue of the patent the matter becomes subject to inquiry only in the courts and by judicial proceedings. . . . This jurisdiction of the department has been maintained in cases of preemption where the entire purchase money has been paid and a receiver's final certificate issued."

And in *Orchard v. Alexander*, 157 U. S. 372, that court, at page 383, said:

"Of course, this power of reviewing and setting aside the action of the local land officers is, as was decided in *Cornelius v. Kessel*, 128 U. S. 456, not arbitrary and unlimited. It does not prevent judicial inquiry. *Johnson v. Towsley*, 13 Wall. 72. The party who makes proofs, which are accepted by the local land officers, and pays his money for the land, has acquired an interest of which he cannot be arbitrarily dispossessed. His interest is subject to state taxation. *Carroll v. Safford*, 3 How. 441; *Witherspoon v. Duncan*, 4 Wall. 210. The government holds the legal title in trust for him, and he may not be dispossessed of his equitable rights without due process of law. Due process in such case implies notice and a hearing. But this does not require that the hearing must be in the courts, or forbid an inquiry and determination in the Land Department."

There can be no doubt, therefore, that the land department was authorized to investigate the proofs upon which the final certificate was issued and to call for additional proofs. This, we think, did not change the status of the final certificate. It simply delayed the issuance of the patent and in case of an adverse ruling by the land department, the certificate might have been cancelled. But in this case the final certificate was not cancelled and Mr. Haumesser remained in possession of his land.

No case has been cited to us which holds that an adverse proceeding such as this relieves the land from taxation. The statutes of this state, Rem. & Bal. Code, § 9140 (P. C. 501 § 91), provide:

"The assessor must assess all improvements on public lands as personal property until the settler thereon has made final proof. After final proof has been made, and a certificate issued therefor, the land itself must be assessed, notwithstanding the patent has not been issued."

It is clear, therefore, that under the statute, this land was subject to taxation unless the filing of the adverse proceeding after the issuance of the final certificate suspended the right of the state to levy taxes upon the land. This question was before the supreme court of Minnesota in the case of *County of Polk v. Hunter*, 42 Minn. 312 (*State v. Hunter*, 44 N. W. 201). That was a case substantially like this. The court there said:

"Lands sold by the United States may be taxed before it has parted with the legal title by issuing a patent, and this doctrine is applicable to cases where the *right* to the patent is complete, and the equitable title is fully vested in the party, without anything more to be paid, or any act to be done going to the foundation of his right. . . .

"The respondent concedes the law to be as stated above, but argues that because the entry is suspended and further proof required, the land is still public and non-taxable; but this position cannot be sustained. The defendant has complied with the law in all respects, except in the matter of proof. That submitted was held sufficient but irregularly made. He has paid his money, and to him has been issued a receiver's final receipt, which, under the laws of this state, is *prima facie* evidence of title, and may be recorded with the same force and effect in law, with respect to notice and title, as the patent. The respondent is the equitable owner of the land, the legal title only remaining in the United States. He is required to perform another act, that is, to submit his proof in the regular way; but this in no manner affects the foundation of his right to the land. That is assured, because he has complied with the preemption law; and if he fails to obtain formal evidence of title, it will be through an omission for which he is responsible. Should this be the result, and the land revert to the federal government, the question of its taxation would be one to be hereafter settled, and in which respondent would have no interest. . . . It

would be opposed to sound reason to say that the state can be deprived of its revenue, if the suspension be arbitrary and unauthorized, until such time in the future as it pleases the department to so declare by rescinding its order, or otherwise; and it would be unjust to permit the respondent to escape the common burden of taxation by delaying to comply with the requirements of the commissioner as to formal proof. The land is taxable."

In Iowa, in *Herrick & Stevens v. Sargent & Lahr*, 140 Iowa 590, 117 N. W. 751, 132 Am. St. 281, the court in considering the same question presented here, said:

"The rights of the locator in the premises do not date from the time when he succeeded in removing the cloud, but from the date when the location was actually made. It is the well established doctrine that he who has the right to property, and is not excluded from its enjoyment, shall not be permitted to use the legal title of the government to avoid his just share of taxes. *Railroad Co. v. Price*, 133 U. S. 496 (10 Sup. Ct. 341, 33 L. Ed. 687). And the fact that patent is suspended during some investigation or controversy concerning the rights of the person claiming such patent does not necessarily prevent the application of this rule. *Railroad Co. v. Patterson*, 154 U. S. 130 (14 Sup. Ct. 977, 38 L. Ed. 934); *Maish v. Arizona*, 164 U. S. 609 (17 Sup. Ct. 193, 41 L. Ed. 567); *Loan & Trust Co. v. Railroad Co.* (C. C.) 76 Fed. 15."

In *Farnham v. Sherry*, 71 Wis. 568, 37 N. W. 577, in considering the same question we now have presented, in a case very similar to the one under consideration, that court said:

"The case of *Wis. Cent. R. Co. v. Price Co.*, 64 Wis. 579, in principle is identical with the present case. The railroad company was entitled to patents from the United States for certain specific lands. The government land officers refused to issue such patents, claiming that the railroad company was not entitled thereto, yet the equitable title was held to be in the railroad company, and the lands were held taxable although patents were refused. See, also, the recent cases of *Wis. Cent. R. Co. v. Wis. River Land Co.*, ante, p. 94; *Spiess v. Neuberg*, ante, p. 279. The question under consideration was fully discussed in those cases by Mr. Jus-

tice Cassoday, and numerous authorities cited bearing upon it. The opinions and judgments therein are conclusive of the question, and relieve us from the necessity of further discussion thereof. . . .

"We hold that, from the location of the land by Watkins in 1857 down to the sale thereof in 1863 for nonpayment of taxes, the entire equitable title to, and beneficial interest in, the land in controversy was in Watkins, by virtue of his entry, location, and purchase thereof, and hence that the same was taxable in 1862 unless exempted from taxation by the act of 1861."

These cases, it seems to us, are in point upon the question here, and are decisive of it. We are of the opinion, therefore, that the filing of the adverse proceeding did not suspend the right of the state to collect the taxes which were levied against the land pending this hearing, especially where the hearing was dismissed, and where the land had remained in the possession of the locator and patent was finally issued to him.

The respondent relies upon *Kansas Pac. R. Co. v. Prescott*, 16 Wall. 603. But that was a case where the court held that the equitable title had not fully vested in the railway company because the railway company had not paid the cost of the survey as required by the act granting the land to it. That was an act going to the foundation of the right to the land. In this case, the final certificate was issued upon proofs, and the equitable title thereby fully vested in the settler. The adverse proceeding which was filed did not purport to set aside the certificate of final proof, but merely had the effect to suspend issuance of the patent until the proceedings were determined. The equitable title and possession of the land rested in Mr. Haumesser during that time.

The judgment of the superior court is therefore reversed, and the cause remanded with instructions to dismiss the proceeding.

CROW, C. J., PARKER, MORRIS, and FULLERTON, JJ., concur.