## OWENSBORO NATIONAL BANK *v.* OWENSBORO.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 148. Argued February 27, 28, 1899. — Decided April 3, 1899.

A State is wholly without power to levy any tax, either direct or indirect,
upon national banks, their property, assets or franchises, except when
permitted so to do by the legislation of Congress.

Section 5219 of the Revised Statutes is the measure of the power of States
to tax national banks, their property or their franchises, that power
being confined to a taxation of the shares of stock in the names of the
shareholders, and to an assessment of the real estate of the bank.

The taxing law of the State of Kentucky, under the provisions of which
the tax in controversy in this case was imposed, is beyond the authority
conferred by Congress on the States, and is void for repugnancy to that
act.

The tax here complained of having been assessed on the franchise or in-
tangible property of the corporation, was not within the purview of the
authority conferred by the act of Congress, and was therefore illegal.

THIS suit was originally instituted in a court of the State of
Kentucky by the plaintiff in error, the Owensboro National
Bank. The relief prayed was that the city of Owensboro
and its tax collector Simmons be perpetually restrained from
enforcing the collection of alleged "franchise" taxes for the
years 1893 and 1894, claimed by the defendants to have been
assessed under authority of a revenue act of the State of
Kentucky enacted November 11, 1892, as amended. The
taxes in question were laid upon the amount fixed by the
state board of valuation and assessment provided for in the
act, which valuation equalled the combined sum of the par
of the capital stock of the bank, its surplus and undivided

profits. It is admitted on the record that the avails of the bank to the amount of the valuation were invested in non-taxable bonds of the United States. Various reasons why the taxes should be declared illegal were urged in the petition and the amendments thereto. Without going into detail, all the grounds are substantially included in the following summary :

1. That the levy of the taxes in question impaired the obligation of an alleged irrevocable contract entered into in 1886 between the bank and the State, and embodied in a legislative enactment referred to as the Hewitt Act, which contract was protected from impairment by the Constitution of the United States ;

2. That the taxes complained of were unlawful, because they were not laid on the shares of stock in the names of the shareholders, but were actually imposed on the property of the bank, contrary to the act of Congress ;

3. That if the taxes were not on the property of the bank, then they were imposed on its franchise or right to do business, derived from the laws of the United States, which the State was, under the law of the United States, without power to tax either directly or indirectly ;

4. That even if the taxes were otherwise valid, they were unlawful, because discriminatory, inasmuch as certain state banks which were incorporated prior to the year 1856 were entitled to a low rate of taxation resulting from charter contracts, and it was illegal to tax national banks at a higher rate than that assessed against the most favored state bank ;

5. That the law under which the taxes were levied and the modes of procedure adopted in carrying the law into effect operated to produce inequality in taxing the property of the bank, to its disadvantage, as compared with other property within the State, contrary to the state constitution ;

6. That the rate of taxation imposed by the city of Owensboro for the year 1893 was in excess of that authorized by the state constitution or laws ;

7. That if the taxes complained of were considered laid,

not upon the capital or franchise of the bank, but upon the shares of stock in the names of the shareholders, then they were discriminatory as against shareholders who were the heads of families, as such shareholders were not permitted to deduct from the assessment against their shares an exemption authorized by a statute of the State in favor of the class of individuals referred to ;

8. That if the bank could be legally taxed upon its property of any kind it was a foreign corporation as to the State of Kentucky, and could only be taxed to the extent that its property was invested and had been earned in the city of Owensboro.

The petitions and the amendments thereto were demurred to, and an answer filed reserving the demurrers. Motions were made to dissolve a preliminary injunction which had been allowed. On these motions testimony was heard. The court dissolved the injunction and sustained the demurrers, and, the plaintiff failing to plead further, the petition and amended petitions were dismissed. On appeal the Court of Appeals of the State of Kentucky affirmed the judgment of the lower court, and the cause was then brought here for review.

*Mr. W. T. Ellis* for plaintiff in error. *Mr. Wilfred Carico* and *Mr. George W. Jolly*, each filed a brief for same.

*Mr. Chapeze Wathen* and *Mr. J. D. Atchison* for defendant in error.

Mr. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The claim of contract arising from the Hewitt Act need not be considered, as it is disposed of adversely to the contentions of the plaintiff in error by the opinion expressed in *Citizens' Savings Bank of Owensboro* v. *Owensboro*, just decided. We therefore dismiss that subject and the questions arising from it from further consideration.

The other issues which the cause presents group themselves under two distinct headings : First, a contention that the taxes

levied were illegal, because imposed in violation of the act of Congress regulating the method of taxation which the respective States may exert against national banks or their stockholders as such; second, because the taxes imposed are discriminatory.

This latter question has a twofold aspect, since some of the charged discriminations are asserted to be in violation of the act of Congress, and others are claimed to arise because of an asserted contravention of the state law and constitution. Of course, we are concerned only with the discrimination claimed to constitute a violation of the law of the United States. We need not, however, dissect the discriminations relied upon so as to separate the Federal from the state questions in this regard, at least until we have disposed of the contention that the taxes were levied upon the bank and its property in violation of the laws of the United States, since if error in this regard is found, the taxes will be illegal, and it will become unnecessary to determine whether they were discriminatory even from a Federal aspect.

Were the taxes complained of levied upon the bank, its property or franchise, and if so were they legal? is the question which then arises on the threshold of the case.

Two elements are involved in the determination of this question — that is, the extent of the power of the respective States to tax national banks, and the ascertainment of the scope and purport of the law by which the taxes complained of were levied.

Early in the history of this Government, in cases affecting the Bank of the United States, it was held that an agency, such as that bank was adjudged to be, created for carrying into effect national powers granted by the Constitution, was not in its capital, franchises and operations subject to the taxing powers of a State. *M'Culloch* v. *Maryland*, 4 Wheat. 316; *Osborn* v. *Bank of the United States*, 9 Wheat. 738.

The principles settled by the cases just referred to and subsequent decisions were thus stated by this court in *Davis* v. *Elmira Savings Bank*, 161 U. S. 283:

"National banks are instrumentalities of the Federal Gov-

ernment, created for a public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt, by a State, to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the Federal Government to discharge the duties, for the performance of which they were created. These principles are axiomatic, and are sanctioned by the repeated adjudications of this court."

It follows then necessarily from these conclusions that the respective States would be wholly without power to levy any tax, either direct or indirect, upon the national banks, their property, assets or franchises, were it not for the permissive legislation of Congress.

The first act providing for the organization of national banks, passed February 25, 1863, c. 58, 12 Stat. 665, contained no grant of power to the States to tax national banks in any form whatever. Doubtless the far-reaching consequence to arise from depriving the States of the source of revenue which would spring from the taxation of such banks, and the error of not conferring the power to tax, early impressed itself upon Congress; for the following year, act of June 3, 1864, c. 106, 13 Stat. 99, power was granted to the States, not to tax the banks, their franchises or property, but to tax the shares of stock in the names of the shareholders. This provision subsequently was amended and supplemented in various particulars, act of February 4, 1868, c. 6, 15 Stat. 34, and the result of this legislation is embodied in section 5219 of the Revised Statutes, which is as follows: ·

"SEC. 5219. Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located

within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county or municipal taxes, to the same extent,. according to its value, as other real property is taxed."

This section, then, of the Revised Statutes is the measure of the power of a State to tax national banks, their property or their franchises. By its unambiguous provisions the power is confined to a taxation of the shares of stock in the names of the shareholders and to an assessment of the real estate of the bank. Any state tax therefore which is in excess of and not in conformity to these requirements is void.

So self-evident are these conclusions that the adjudicated cases justify the deduction. that they have been accepted from the beginning as axiomatic and unquestioned, since the controversies as to taxation of national banks illustrated in the opinions of this court mainly depend, not upon any attempted exercise of a power to tax the property and franchises of the banks, but involved controversies as to whether, when the shares of the stock in the names of the shareholders had been assessed according to law, the tax could be imposed upon them because of alleged discrimination or other illegalities.

Does then the Kentucky statute tax the shares of stock in the names of the shareholders, or does it impose a tax upon the bank, its property or franchise?

Without undertaking to recapitulate the provisions of the Kentucky statutes, in virtue of which the taxes here in question were imposed, we content ourselves with reiterating, in the margin,[1] the statement of the taxing statutes of Kentucky

---

[1] Excerpt from *Adams Express Co.* v. *Kentucky*, 166 U. S. 173:

" Chapter 108 of the compilation of 1894 is divided into articles as well as sections, and may be referred to by way of convenience. There are some slight differences from the act of 1892 not material to be noted. The first

made by the court in *Adams Express Company* v. *Kentucky*, 166 U. S. 171, 175, *et seq.*

The effect of the statutory provisions contained in the third

---

article contains the general provisions relating to the assessment and collection of taxes 'upon all property.' Sections 4019 and 4020 are as follows:

' SEC. 4019. An annual tax of forty-two and one-half cents upon each one hundred dollars of value of all property directed to be assessed for taxation, as hereinafter provided, shall be paid by the owner, person or corporation assessed. The aggregate amount of tax realized by all assessments shall be for the following purposes : Fifteen (15) cents for the ordinary expenses of the government; five (5) cents for the use of the sinking fund; twenty-two (22) cents for the support of the common schools, and one-half of one cent for the Agricultural and Mechanical College, as now provided by law, by an act entitled "An act for the benefit of the Agricultural and Mechanical College," approved April twenty-ninth, one thousand eight hundred and eighty, including the necessary travelling expenses of all pupils of the State entitled to free tuition in said college, and who continue students for the period of ten months, unless unavoidably prevented.

' SEC. 4020. All real and personal estate within this State, and all personal estate of persons residing in this State, and of all corporations organized under the laws of this State, whether the property be in or out of the State, including intangible property, which shall be considered and estimated in fixing the value of corporate franchises as hereinafter provided, shall be subject to taxation, unless the same be exempt from taxation by the constitution, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale.'

Article two relates to the assessment of property by the assessors, to whom every person in the Commonwealth must give in a list of all his property under oath.

Section 4058 provides for schedules with interrogatories to be propounded to each person, ' with affidavit thereto attached, to be signed and sworn to by the person whose property is assessed.' The schedules contain a long list of items, including all forms of tangible and intangible, real, personal and mixed property; the enumeration being exceedingly minute. The first eleven items relate to bonds, notes secured by mortgage, other notes, accounts, cash on hand, cash on deposit in bank, cash on deposit with other corporations, cash on deposit with individuals, all other credits or money at interest, stock in joint stock companies or associations, stock in foreign corporations.

The third article covers the assessment of corporations, corporations generally, banks and trust companies, building and loan associations, turnpikes.

Sections 4077, 4078, 4079, 4080, 4081, 4082 and 4091 are as follows :

' SEC. 4077. Every railway company or corporation, and every incorporated bank, trust company, guarantee or security company, gas company, water company, ferry company, bridge company, street railway company,

article, sections 4077, *et seq.*, as construed and interpreted by the Court of Appeals of the State of Kentucky, were considered in *Henderson Bridge Co.* v. *Kentucky*, 166 U. S. 150,

---

express company, electric light company, electric power company, telegraph company, press dispatch company, telephone company, turnpike company, palace car company, dining car company, sleeping car company, chair car company, and every other like company, corporation or association, and also every other corporation, company or association having or exercising any special or exclusive privilege or franchise, not allowed by law to natural persons, or performing any public service, shall, in addition to the other taxes imposed on it by law, annually pay a tax on its franchise to the State, and a local tax thereon to the county, incorporated city, town and taxing district, where its franchises may be exercised.   The auditor, treasurer and secretary of State are hereby constituted a board of valuation and assessment for fixing the value of said franchise, except as to turnpike companies, which are provided for in section 4095 of this article, the place or places where such local taxes are to be paid by other corporations on their franchises, and how apportioned, where more than one jurisdiction is entitled to a share of such tax, shall be determined by the board of valuation and assessment, and for the discharge of such other duties as may be imposed on them by this act.   The auditor shall be chairman of said board, and shall convene the same from time to time as the business of the board may require.'

'SEC. 4078. In order to determine the value of the franchises mentioned in the next preceding section, the corporations, companies and associations mentioned in the next preceding section, except banks and trust companies whose statements shall be filed as hereinafter required by section four thousand and ninety-two of this article, shall annually, between the fifteenth day of September and first day of October, make and deliver to the auditor of public accounts of this State a statement, verified by its president, cashier, secretary, treasurer, manager or other chief officer or agent, in such form as the auditor may prescribe, showing the following facts, viz: The name and principal place of business of the corporation, company or association; the kind of business engaged in; the amount of capital stock, preferred and common; the number of shares of each; the amount of stock paid up; the par and real value thereof; the highest price at which such stock was sold at a *bona fide* sale within twelve months next before the fifteenth day of September of the year in which the statement is required to be made; the amount of surplus fund and undivided profits, and the value of all other assets; the total amount of indebtedness as principal, the amount of gross or net earnings or income, including interest on investments, and incomes from all other sources for twelve months next preceding the fifteenth day of September of the year in which the statement is required; the amount and kind of tangible property in this State, and where situated, assessed or liable to assessment in this State, and the

and *Adams Express Company* v. *Kentucky*, 166 U. S. 171. In the *Bridge Company case*, referring to the "franchise" tax there in controversy, it was said (p. 154):

---

fair cash value thereof, estimated at the price it would bring at a fair voluntary sale, and such other facts as the auditor may require.

'SEC. 4079. Where the line or lines of any such corporation, company or association extend beyond the limits of the State or county, the statement shall, in addition to the other facts hereinbefore required, show the length of the entire lines operated, owned, leased or controlled in this State, and in each county, incorporated city, town or taxing district, and the entire line operated, controlled, leased or owned elsewhere. If the corporation, company or association be organized under the laws of any other State or government, or organized and incorporated in this State, but operating and conducting its business in other States as well as in this State, the statement shall show the following facts, in addition to the facts hereinbefore required: The gross and net income or earnings received in this State and out of this State, on business done in this State, and the entire gross receipts of the corporation, company or association in this State and elsewhere during the twelve months next before the fifteenth day of September of the year in which the assessment is required to be made. In cases where any of the facts above required are impossible to be answered correctly, or will not afford any valuable information in determining the value of the franchises to be taxed, the said board may excuse the officer from answering such questions: *Provided*, That said board, from said statement, and from such other evidence as it may have, if such corporation, company or association be organized under the laws of this State, shall fix the value of the capital stock of the corporation, company or association, as provided in the next succeeding section, and from the amount thus fixed shall deduct the assessed value of all tangible property assessed in this State, or in the counties where situated. The remainder thus found shall be the value of its corporate franchise subject to taxation as aforesaid.

'SEC. 4080. If the corporation, company or association be organized under the laws of any other State or government, except as provided in the next section, the board shall fix the value of the capital stock as hereinbefore provided, and will determine from the amount of the gross receipts of such corporation, company or association in this State and elsewhere, the proportion which the gross receipts in this State, within twelve months next before the fifteenth day of September of the year in which the assessment was made, bears to the entire gross receipts of the company, the same proportion of the value of the entire capital stock, less the assessed value of the tangible property assessed, or liable to assessment, in this State, shall be the correct value of the corporate franchise of such corporation, company or association for taxation in this State.

'SEC. 4081. If the corporation organized under the laws of this State or of some other State or government be a railroad, telegraph, telephone,

"The tax in controversy was nothing more than a tax on the intangible property of the company in Kentucky, and was sustained as such by the Court of Appeals, as consistent

---

express, sleeping, dining, palace or chair car company, the lines of which extend beyond the limits of this State, the said board will fix the value of the capital stock as hereinbefore provided, and that proportion of the value of the capital stock, which the length of the lines operated, owned, leased or controlled in this State, bears to the total length of the lines owned, leased or controlled in this State and elsewhere, shall be considered in fixing the value of the corporate franchise of such corporation liable for taxation in this State; and such corporate franchise shall be liable to taxation in each county, incorporated city, town or district through, or into which, such lines pass or are operated, in the same proportion that the length of the line in such county, city, town or district bears to the whole length of lines in the State, less the value of any tangible property assessed, or liable to assessment, in any such county, city, town or taxing district.

'SEC. 4082. Whenever any person or association of persons, not being a corporation nor having capital stock, shall, in this State, engage in the business of any of the corporations mentioned in the first section of this article, then the capital and property, or the certificates or other evidences of the rights or interests of the holders thereof in the business or capital and property employed therein, shall be deemed and treated as the capital stock of such person or association of persons for the purposes of taxation and all other purposes under this article, in like manner as if such person or association of persons were a corporation.

'SEC. 4091. All taxes assessed against any corporation, company or association under this article, except banks and trust companies, shall be due and payable thirty days after notice of same has been given to said corporation, company or association by the auditor; and every such corporation, company or association failing to pay its taxes, after receiving thirty days'' notice, shall be deemed delinquent, and a penalty of ten per cent on the amount of the tax shall attach, and thereafter such tax shall bear interest at the rate of ten per cent per annum ; any such corporation, company or association failing to pay its taxes, penalty and interest, after becoming delinquent, shall be deemed guilty of a misdemeanor, and, on conviction, shall be fined fifty dollars for each day the same remains unpaid, to be recovered by indictment or civil action, of which the Franklin Circuit Court shall have jurisdiction.'

The fourth article relates to the assessment and payment of taxes by railroads; the fifth to distilled spirits; the sixth, seventh, eighth and ninth articles to the board of supervisors and the collection of taxes and the revenue.

Articles 10 to 12 relate to license taxes, special taxes, privilege taxes and the like; and articles 13, 14 and 15 prescribe certain duties for designated officers touching the collection of the revenue. Article 15 provides for a

with the provisions of the constitution of Kentucky in reference to taxation."

In the *Express Company* case the court said (pp. 180, 181) :

" Taking the whole act together, and in view of the provisions of sections 4078 to 4081, we agree with the Circuit Court that it is evident that the word 'franchise' was not employed in a technical sense, and that the legislative intention is plain that the entire property, tangible and intangible, of all foreign and domestic corporations, and all foreign and domestic companies possessing no franchise, should be valued as an entirety, the value of the tangible property be deducted, and the value of the intangible property thus ascertained be taxed under these provisions; and as to railroad, telegraph, telephone, express, sleeping car, etc., companies, whose lines extend beyond the limits of the State, that their intangible property should be assessed on the basis of the mileage of their lines within and without the State. . . . There is nothing in the statute which exempts any intangible property owned by any corporation, company or individual taxpayer from taxation, or discriminates between them. . . . The tax mentioned in section 4077 is not an additional tax upon the same property, but on intangible property which has not been taxed as tangible property."

True it is, since the decision referred to, the Court of Appeals of the State of Kentucky has, it is asserted in the case of *Louisville Tobacco Warehouse Company* v. *Commonwealth,* on a rehearing, 49 S. W. Rep., examined the terms of section 4077, and is stated to have said :

" The latter clause, 'also every other corporation, company or association having or exercising any special or exclusive

---

state board of equalization to equalize the assessments returned to them from each county."

---

By section 4092, banks and trust companies are required to file the report referred to in section 4078 by a date named.    The section also prescribed when taxes are payable, and that upon failure to file the reports " or to pay said taxes, said banks and trust companies shall be subjected to the same fines and penalties as prescribed in section fifteen (4091) of this article."

privilege or franchise not allowed by law to natural persons, or performing any public service,' seems to us to have been added for the purpose of including such corporations as were not strictly *ejusdem generis* with the companies previously enumerated, but which might possess exclusive privileges; and, as a provision for the future, to impose the intangible property tax upon corporations to be thereafter created, which might have exclusive privileges, or perform public services.

" The only authority relied upon in support of the contention that this language includes all corporations is the case of *Western Union Telegraph Company* v. *Norman*, 77 Fed. Rep. 27. But that case was in relation to a company specifically named in the statute under consideration. The question here presented did not arise in that, and was, presumably, not argued; and the suggestion made by the learned judge who delivered that opinion was made in argument in reaching a conclusion, to reach which the dictum cited was not necessary."

In deciding that the conviction of the corporation for wilfully failing to file with the state auditor the statement required by the Kentucky Statutes, sections 4077 and 4078, was erroneous, the court in that case, it is also stated, has, moreover, further observed:

" Nor can the appellant corporation be said to have any intangible property subject to taxation under this statute. Its tangible property — its warehouse, drays and personal property — is of no greater value in the hands of the corporation than it would be if owned and managed by the natural persons who are its stockholders. This is also true of its choses in action, etc. The value of its capital stock must necessarily be the value of its tangible property, choses in action, etc. It had no intangible property subject to taxation under the statute, and, as matter of law, could have none. . . . The revenue law of the State is not unconstitutional because it does not require natural persons, possessing no special franchise or privilege, to make report of special privileges and franchises for taxation; nor is it unconstitutional in failing to require a report from all classes of corporations which can

possess the intangible property sought to be taxed by this statute. The tax upon tangible property of all corporations is elsewhere provided for."

The opinion, however, from which the foregoing extracts are made, has not as yet been reported. But, if the Court of Appeals of Kentucky has given to the state statute the construction indicated, the ruling does not affect the present case, as banks are specifically mentioned in the statute.

The tax then, as defined in the law, as interpreted by the Court of Appeals of Kentucky and by this court in the opinions from which we have excerpted, is a tax nominally on the franchise of the corporation, but in reality a tax on all the intangible property of the corporation. The proposition then comes to this: Nothing but the shares of stock in the hands of the shareholders of a national bank can be taxed, except the real estate of the bank. The taxes which are here resisted are not taxes levied upon the shares of stock in the names of the shareholders, but are taxes levied on the franchise or intangible property of the corporation. Thus, bringing the two conclusions together, there would seem to be no escape in reason from the proposition that the taxing law of the State of Kentucky is beyond the authority conferred by the act of Congress, and is therefore void for repugnancy to such act.

It is, however, urged that whilst the taxes may not be in form imposed on the shares of stock in the names of the shareholders, and may be in form a tax on the franchise or property of the bank, nevertheless they are equivalent to a tax on the shares of stock in the names of the shareholders, and therefore do not violate the act of Congress. But this proposition concedes that the taxing statute does not conform to the act of Congress, and yet invokes its permissive authority, since, as already shown, without the grant made by the act of Congress there would be no power to tax at all. Passing, nevertheless, this contradiction, and looking beneath the mere form, we come to the substance of things. The alleged equivalency, in order to be of any cogency, must of necessity contain two distinct and essential elements — equivalency in law and equivalency in fact. Does it contain either? is the question.

To be equivalent in law, involves the proposition that a tax on the franchise and property of a bank or corporation is the equivalent of a tax on the shares of stock in the names of the shareholders. But this proposition has been frequently denied by this court, as to national banks, and has been overruled to such an extent in many other cases relating to exemptions from taxation, or to the power of the States to tax, that to maintain it now would have the effect to annihilate the authority to tax in a multitude of cases, and as to vast sums of property upon which the taxing power is exerted in virtue of the decisions of this court holding that a tax on a corporation or its property is not the legal equivalent of a tax on the stock, in the names of the stockholders. A brief review of the two classes of cases, by which the doctrines just stated are overwhelmingly established, will make the foregoing result clear.

The earliest case in the reports of this court is *Van Allen* v. *The Assessors*, (1865) 3 Wall. 573. The tax was on the shares of stock in the names of the shareholders, pursuant to the act of Congress. Two issues were presented, one, the assertion that the state banks were assessed on their capital and surplus, and therefore that stockholders in national banks were substantially discriminated against. This was held to be well taken; clearly, therefore, deciding that there was no equivalency between taxing the capital and surplus in the hands of the bank and taxing shares in the names of the shareholders, for if the two had been equivalent the decision would necessarily have been otherwise. The other question in the case was thus stated by the court, through Mr. Justice Nelson, page 581:

"The main and important question involved, and the one which has been argued at great length and with eminent ability, is, whether the State possesses the power to authorize the taxation of the shares of these national banks in the hands of stockholders, whose capital is wholly vested in stock and bonds of the United States."

This question was examined, and it was decided that, as the shares of stock in the hands of the shareholders were distinct and different subjects-matter of taxation from the property **or**

rights of the bank, that therefore the power conferred by Congress could be exercised so as to tax the shareholders even although the property of the bank was invested in non-taxable bonds of the United States, because the two were distinct and different things.

It is to be remarked that it is patent from the opinion of the court that, if the shares of stock had been considered as in anywise the equivalent of the bonds, in which the property of the bank was invested, the tax would have been held invalid, despite the authority to tax the stock given by the act of Congress, as such authority would not have been construed as authorizing a violation of the faith of the United States by taxing bonds issued by the Government which were not subject to taxation. It follows then that not only did this decision refute the claim of equivalency between the tax on the bank or its property or franchises and the tax on the stock in the names of the stockholders, but by a negative affirmative it demonstrates that if the two are equivalent the tax in this case would be illegal, since the record here admits that a sum, at least the equivalent of the capital, surplus and undivided profits of the bank, was invested in bonds of the United States. The contention of equivalency then destroys itself, and if it were conceded would bring about the illegality of the tax, in support of the legality of which the argument is advanced.

Following this came the decision in *People* v. *Tax Commissioners*, (1866) 4 Wall. 244, in which, reiterating the decision in *Van Allen* v. *The Assessors*, it was held, because the property of the bank was distinct and separate from the shares of stock in the names of the shareholders, therefore the latter were not entitled to deduct exempt property belonging to the bank from the assessment on their shares. The court said, again through Mr. Justice Nelson, and in part quoting from the opinion in the *Van Allen case*, (p. 258):

" ' The corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as

a private individual can deal with his own. . . . The interest of the shareholder entitles him to participate in the net profits earned by the bank, in the employment of its capital, during the existence of its charter, in proportion to the number of his shares; and upon its dissolution or termination, to his proportion of the property that may remain, of the corporation, after the payment of its debts. This is a distinct, independent interest or property, held by the shareholder like any other property that may belong to him;' and, we add, of course, is subject to like taxation."

The next case in order of time is *Bradley* v. *The People*, (1866) 4 Wall. 459. The question which the case presented was whether a tax on the property or rights of the bank was the legal equivalent of a tax on the shares of stock in the names of the shareholders. The argument of counsel was that in determining this question the method was immaterial, but the substance would be considered. The argument urged (p. 460): "Neither the National Government, the creator of the species of property now taxed, nor the shareholders can be interested in the *methods* which may be adopted by the State for the imposition of the tax." The court, through Mr. Justice Nelson, after referring to the decision in *Van Allen* v. *The Assessors*, and the tax there imposed, said (p. 462):

"It was in that case attempted to be sustained on the same ground relied on here, that the tax on the capital was equivalent to tax on the shares, as respected the shareholders. But the position was answered that, admitting it to be so, yet, inasmuch as the capital of the state banks may consist of the bonds of the United States, which were exempt from state taxation, it was not easy to see that the tax on the capital was an equivalent to a tax on the shares."

In *National Bank* v. *Commonwealth*, (1870) 9 Wall. 353, a statute of the State of Kentucky which imposed a tax of fifty cents a share on bank stock, or stock in any moneyed corporation, of loan or discounts, owned by individuals, corporations or societies, was held to authorize a tax on the shares of the stockholders, as distinguished from the capital of the bank invested in Federal securities, and this, although the tax

was collected from the bank instead of the individual stock-holders. In the opinion of the court, delivered by Mr. Justice Miller, a summary statement was made of the doctrine enunciated in the prior decisions recognizing the distinction between the property owned by an incorporated bank as a corporate entity and the property or interest of the stockholders in such bank, commonly called a share.

These cases, interpreting the act of Congress, have never been questioned, and indeed form the basis upon which the taxation of the shares of stock in the names of the shareholders allowed by the act of Congress has been made efficacious for the purpose of bringing a vast amount of property within the taxing power of the States, which would have been excluded had not the principles which the cases announced been established. If the postulate upon which they necessarily rest be overthrown by saying that there is an equivalency between the taxation of the property of the bank and the shares of stock in the names of the stockholders, it would follow that the principles upheld by the cases would disappear with the destruction of the reasons upon which they were placed. It would then necessarily follow that the grant by Congress of authority to tax the shares of stock in the names of the shareholders could not be exercised where the bank held bonds of the United States exempt from taxation ; that the two things being the same, the shareholders would be entitled to deduct the property of the bank from the sum of the taxation of the shares ; in other words, that the right to tax the shareholders would be a vain thing.

It has been suggested that other cases decided since the cases referred to, whilst not questioning the latter, in effect admit a doctrine which tends to a contrary result. We do not stop to review in detail the cases from which this result is claimed to arise. They are: *Palmer* v. *McMahon*, 133 U. S. 660 ; *Bank of Redemption* v. *Boston*, 125 U. S. 60 ; *Davenport National Bank* v. *Davenport Board of Equalization*, 123 U. S. 83 ; *Mercantile Bank* v. *City of New York*, 121 U. S. 138. It suffices to say that the claim is devoid of founda-

tion. In all the cases referred to the taxation was specifically imposed on the shares of stock in the name of the shareholders, and the question presented, in various forms, was whether the provisions of state taxing laws, created a discrimination in favor of other moneyed capital and against the shareholders in national banks, contrary to the act of Congress. On these questions, interpreting the act of Congress with the liberality of construction resorted to in the *Van Allen case* and those which followed it, the court in most of the instances rejected the charge of discrimination. The result of the cases in question tended to give efficient vitality to the grant of Congress to tax the shares of stock in the names of the shareholders. The argument now relied on would, if it were adopted, operate to destroy the power to tax, which the act of Congress sanctions.

It cannot be doubted that, as a general principle, it is settled that the taxation of the property, franchises and rights of a corporation is one thing and the taxation of the shares of stock in the names of the shareholders is another and different one. This doctrine has been applied to sanction the taxation of the one where the other was covered by a contract of exemption. As the result of its application, it is unquestioned that much property has been brought within the range of the taxing power which otherwise would have escaped taxation. It is unnecessary to multiply citations on this subject, as the question has been in recent cases reviewed and restated fully by the court. Thus, in *Bank of Commerce* v. *Tennessee*, 161 U. S. 134, 146, it was said, through Mr. Justice Peckham:

"The capital stock of a corporation and the shares into which such stock may be divided and held by individual shareholders are two distinct pieces of property. The capital stock and the shares of stock in the hands of the shareholders may both be taxed, and it is not double taxation. (*Van Allen* v. *Assessors*, 3 Wall. 573; *People* v. *Commissioners*, 4 Wall. 244, cited in *Farrington* v. *Tennessee*, 95 U. S. 687.)

"This statement has been reiterated many times in various decisions by this court, and is not now disputed by any one. In the case last cited Mr. Justice Swayne, in delivering the

opinion of the court, enumerated many objects liable to be taxed other than the capital stock of a corporation, and among them he instanced, (1) the franchise to be a corporation; (2) the accumulated earnings; (3) profits and dividends; (4) real estate belonging to the corporation and necessary for its business; and he adds that 'this enumeration shows the searching and comprehensive taxation to which such institutions are subjected where there is no protection by previous compact.' And in *Tennessee* v. *Whitworth*, 117 U. S. 129, at page 136, Mr. Chief Justice Waite, in delivering the opinion of the court, says: 'That in corporations four elements of taxable value are sometimes found: First, the franchise; second, the capital stock in the hands of the corporation; third, the corporate property; and, fourth, the shares of capital stock in the hands of the individual stockholders.'

"The surplus belonging to this bank is 'corporate property,' and is distinct from the capital stock in the hands of the corporation. The exemption, in terms, is upon the payment of an annual tax of one half of one per cent upon each share of the capital stock, which shall be in lieu of all other taxes. The exemption is not, in our judgment, greater in its scope than the subject of the tax."

And, in the case of *New Orleans* v. *Citizens' Bank*, 167 U. S. 371, although it was held that the capital of the bank was exempt from taxation by a charter contract, and that, owing to the peculiar provisions of the charter, it would violate the contract to compel the bank to pay a tax levied on its shareholders, nevertheless the exemption did not preclude the levy of a tax upon the stock in the names of the stockholders, the court said (p. 402):

"The doctrine that an exemption of the capital of a corporation does not, of necessity, include the exemption of the shareholders on their shares of stock is now too well settled to be questioned."

There being then no equivalency between the assessment of the bank and the assessment of the shares in the names of the shareholders, it follows that the tax here complained of, which was assessed on the franchise or intangible property

of the corporation, was not within the purview of the authority conferred by the act of Congress, and was therefore illegal.

Whilst this conclusion suffices to dispose of the case, we advert to the contention that although there may not be a legal equivalency, there is nevertheless one in fact, and therefore the tax should be sustained. It may be that in the case before us, there is a coincidence between the sum of the tax levied upon the corporation and the amount which would have been imposed had the shares of stock in the names of the shareholders been assessed according to the act of Congress. But that this is not the necessary result of the taxing statute is too plain to require comment. The fact that it is not is well illustrated by *Henderson Bridge Company* v. *Kentucky, supra,* for there the tax which was sustained on the franchise or intangible property of the corporation admittedly enormously exceeded the total of the capital stock, and proceeded upon the theory that the bonds issued by the corporation were an element to be taken into consideration in fixing the value of the franchise or intangible property. If the mere coincidence of the sum of the taxation is to be allowed to frustrate the provisions of the act of Congress, then that act becomes meaningless and the power to enforce it in any given case will not exist. This follows since if mere coincidence of amount and not legal power be the test, only a pure question of fact would arise in any given case. The argument that public policy exacts that where there is an equality in amount between an unlawful tax and a lawful one, the unlawful tax should be held valid, does not strike us as worthy of serious consideration.

The system of taxation devised by the act of Congress is entirely efficacious and easy of execution. By its enforcement, as interpreted, settled policies of taxation have been evolved embracing large amounts of property which would not otherwise be taxable, and which, as we have seen, will escape taxation if the past development of the system be destroyed by recognizing, without reason, a principle inconsistent with the law and destructive of the safeguards which it imposes.

From the foregoing conclusions, it results that as the taxes were imposed upon the bank and its property or franchise, and not upon the shares of stock in the name of the stockholders, such taxes were void, and

*The decree below must be and the same is hereby reversed and the cause be remanded for further proceedings not inconsistent with this opinion.*