LIBERTY NATIONAL BANK AND TRUST COMPANY, Petitioner, *v.* WILLIAM K. BUSCAGLIA, as Director of the Division of Sales Tax, County of Erie, et al., Respondents.

Fourth Department, June 17, 1966.

*Jaeckle, Fleischmann, Kelly, Swart & Augspurger (Alan H. Vogt, William D. Schulz* and *John J. LaFalce* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General (Robert W. Bush* of counsel), for State Tax Commission, respondent.

*John S. Ryan* for William K. Buscaglia, respondent.

*William J. Stevens* and *William M. Weegar* for Monroe County Special Tax Bureau, *amicus curiæ.*

DEL VECCHIO, J. This controversy, by which the parties seek an adjudication as to the validity of certain sales and use taxes when applied to a national bank, is before this court for determination in the first instance, pursuant to CPLR 3222 (subd. [b], par. 3).

The proceeding was originally commenced under article 78 of the CPLR, but with the joinder of the New York State Tax Commission has been treated by the parties, and will be regarded by the court under CPLR 103 (subd. [c]), as a declaratory judgment action.

Petitioner is a former domestic banking corporation which was converted to a national banking association pursuant to title 12 of the United States Code on April 19, 1963. It is located in the City of Buffalo, Erie County, New York. Respondents are the Director of the Division of Sales Tax for Erie County and the New York State Tax Commission. The Monroe County Special Tax Bureau has filed a brief *amicus curiæ*.

On April 19, 1963 there was in effect in Erie County a sales tax of 1% '' upon the amount of the receipts from every retail sale or sale at retail in this county of tangible personal property '', which had been enacted by the Erie County Board of Supervisors in May, 1947. The resolution imposing the tax provided that on each taxable sale the tax should be stated and charged separately from the sales price and shown separately on any record of the sale; that it should be '' paid by the purchaser to the vendor as trustee for and on account of the county ''; that the vendor should be liable for the collection of the tax and for the tax; that when the purchaser failed to pay the tax to the vendor the purchaser should pay the tax directly to the County Sales Tax Director and file a return thereof within 15 days after the sale. A compensating use tax was also imposed. The enabling act authorizing the Board of Supervisors to impose a sales tax provided that transactions by or with the United States, insofar as it is immune from taxation, should not be subject to any of the tax authorized. On June 2, 1964 the Erie County Board of Supervisors increased the rate of the sales and use taxes to 3%, effective July 1, 1964.

Petitioner made payments totaling $31,401.42 of sales and use taxes, and interest, under the afore-mentioned resolution on purchases of tangible personal property for its own use from the date of its certification as a national banking association. Its application for refund, made pursuant to the provisions of the taxing resolution, on the ground that as a national bank it is a Federal instrumentality immune from such taxation, was

denied by respondent Director. This proceeding was commenced to compel the refund.

Effective August 1, 1965 the State of New York enacted a sales and compensating use tax upon the receipts from the retail sale or use of tangible personal property and various services as provided in chapters 93 and 94 of the Laws of 1965. The provisions for collection of the sales tax, except as to some details not here relevant, were substantially the same as those mentioned above concerning the Erie County tax. Prior to the commencement of this proceeding however, wherein petitioner also seeks a declaration that it is exempt from the foregoing State sales and use taxes, no payments had been made by petitioner on account of the State levies.

The question to be decided is whether the Liberty National Bank, as a purchaser, is immune from the above sales and use taxes.

Early in the history of this Nation the United States Supreme Court ruled that States, and by necessary implication their governmental subdivisions, were without authority to impose a tax upon the Bank of the United States chartered under an act of Congress. (*McCulloch* v. *Maryland,* 4 Wheat. [17 U. S.] 316.) Subsequently in *Owensboro Nat. Bank* v. *Owensboro* (173 U. S. 664), the court considered in detail the immunity from State and local taxation of national banks, holding that such instrumentalities were not subject to such taxation except when and as permitted by legislation of Congress. Referring to section 5219 of the Revised Statutes, which authorized the taxation of shares of stock in a national bank and real estate of the bank, the court said (p. 669): "This section, then, of the Revised Statutes is the measure of the power of a State to tax national banks, their property or their franchises. By its unambiguous provisions the power is confined to a taxation of the shares of stock in the names of the shareholders and to an assessment of the real estate of the bank. Any state tax therefore which is in excess of and not in conformity to these requirements is void." (See, also, *People ex rel. Hanover Nat. Bank* v. *Goldfogle,* 234 N. Y. 345, 349.)

Although section 5219 of the Revised Statutes, as amended (U. S. Code, tit. 12, § 548), has somewhat enlarged the area of State taxation of national banks, it contains no reference to sales or use taxes such as are here under consideration and respondents do not assert any power to tax based upon this section. The contention is made rather that because of a change in the nature of national banks since the days of *McCulloch* and

*Owensboro,* and because of a trend apparent in Federal case law to limit the doctrine of implied delegated immunity, this court should now hold that national banks have become subject to taxation beyond the limits provided by the act of Congress. However, as recently as 1939 the Supreme Court, although recognizing that " the national bank's usefulness as an agency to provide for currency has diminished markedly ", nevertheless reiterated that its banking operations are free from State taxation except as Congress may permit. (*Colorado Bank* v. *Bedford,* 310 U. S. 41, 48, 50; see, also, *Des Moines Bank* v. *Fairweather,* 263 U. S. 103, 107.) In *Michigan Nat. Bank* v. *Michigan* (365 U. S. 467) decided in 1961, the court had occasion to pass upon the validity of a State tax on national bank shares. It was there said (p. 470): " The *sole authorization* upon which Michigan's Act No. 9 [the State taxing statute] may rest is § 5219 " (emphasis supplied), thus reaffirming the principle that national banks are not generally subject to State taxation.

With regard to the limitation of the doctrine of implied delegated immunity, it has been recognized that the recent curtailment in this area is confined to involvement of persons and corporations (most frequently, contractors) dealing with the United States Government. " But unshaken, rarely questioned, and indeed not questioned in this case, is the principle that possessions, institutions and activities of the Federal Government itself in the absence of express congressional consent are not subject to any form of state taxation." (*United States* v. *Allegheny County,* 322 U. S. 174, 177.) In view of the authorities discussed above, this court is bound to conclude that a State or local subdivision thereof is without power to impose a sales or use tax upon a national bank. Such power can only be conferred by Congress.

Respondents' assertion that the New York State and Erie County sales and use taxes in question are not taxes upon petitioner bank but are taxes imposed on the vendor is without merit. It is the legal incidence, rather than the economic burden (although in this case these seem to fall upon the same party to the sale), which is determinative of this issue. (*Alabama* v. *King & Boozer,* 314 U. S. 1; *Curry* v. *United States,* 314 U. S. 14.) The Court of Appeals of this State has held that the incidence of a sales tax similar to those now under consideration is upon the purchaser. (*Matter of Fifth Ave. Bldg. Co.* v. *Joseph,* 297 N. Y. 278, 284; *Matter of Kesbec, Inc.* v. *McGoldrick,* 278 N. Y. 293, 297.)

We are aware that, when the question of the validity of a State taxing statute falling upon a United States Government

institution, instrumentality or activity is involved, the determination of the legal incidence of the tax as made by the highest court of the State is not controlling. (*Society for Sav.* v. *Bowers,* 349 U. S. 143; *Kern-Limerick, Inc.* v. *Scurlock,* 347 U. S. 110.) In this circumstance, the United States Supreme Court is the final arbiter of legal incidence. However, the conclusion reached by the Court of Appeals is in accord with the view expressed by the Supreme Court in *Kern-Limerick, Inc.* v. *Scurlock* (*supra*) and other similar cases where it has been held that a sales or service tax which by its terms must be passed on to the purchaser, separately stated, has its legal incidence on the purchaser. (*Colorado Bank* v. *Bedford, supra*; *Alabama* v. *King & Boozer, supra*; *McGoldrick* v. *Berwind-White Co.,* 309 U. S. 33.)

Accordingly, we conclude that the sales and use taxes here in question could not lawfully be imposed on receipts from sales and services made or rendered to petitioner bank subsequent to April 19, 1963 and that it should be entitled to a refund of $31,401.42, the amount of such taxes including interest paid by it after that date, plus interest thereon.

WILLIAMS, P. J., BASTOW, GOLDMAN and HENRY, JJ., concur.

Submitted controversy unanimously determined in favor of petitioner, without costs.