OPINION OF THE COURT
Fuchsberg, J.
The two petitioners, who each lease and occupy premises in the City of New York, where they have their principal places of business, are banking associations chartered under the laws of the national Government. In separate proceedings, brought under CPLR article 78 and considered together, they challenge imposition upon them of the city’s commercial rent tax (Administrative Code of City of New York, ch 46, tit L) covering the period from June 1, 1970 through May 31, 1972.[1]
The appeals to us are from judgments of the Appellate Division, which, one Justice dissenting, confirmed final determinations of the New York City Finance Administration adverse to the banks and dismissed their petitions.
The pivotal issue is whether, because of the provisions of applicable Federal law, the appellants, as national banks, were immune from the tax assessed for the period in question. In particular, the resolution of this case turns on an analysis of the effect on New York tax laws of the enactment of United States Public Law No. 91-156 (83 US Stat 434), which in essence permitted States and their subdivisions to tax national banks on an equal footing with State banks.
Adopted in 1969, United States Public Law No. 91-156 *429 constituted the then latest exercise of the Federal Government’s authority, recognized since the historic decision in McCulloch v Maryland (17 US 316, 432, 439), to allow States to tax national banks (Agricultural Bank v Tax Comm., 392 US 339, 343, Owensboro Nat. Bank v Owensboro, 173 US 664; see, also, Liberty Nat. Bank & Trust Co. v Buscaglia, 26 AD2d 97, revd 21 NY2d 357, affd upon rearg 23 NY2d 933).
As its legislative history makes clear, the passage of the 1969 statute was precipitated by State reaction to the United States Supreme Court decision in the Agricultural Bank case (supra). In its holding that Massachusetts could not apply its sales tax to purchases made by national banks within its boundaries the court there reiterated that Federal statutory enumeration of the taxes States might levy on national banks carried with it a prohibition on the imposition of any others (see 115 Congressional Record 19909 [1969]; HR Rep No. 91-290, 91st Cong, 1st Sess, pp 6-7 [1969]). In the wake of that decision, a large number of States and localities found themselves deprived of tax sources on which they had come to rely; representatives of the overwhelming majority of these pressed Congress to relieve their plight (see Testimony Received in Consideration of HR 7491 and Related Bills: Hearings Before the House Committee on Banking and Currency, 91st Cong, 1st Sess 6-27 [1969]; for the effects in New York see Liberty Nat. Bank & Trust Co. v Buscaglia, supra).
Public Law No. 91-156 brought a two-stage change in section 5219 of the United States Revised Statutes (US Code, tit 12, § 548); it provided for "temporary” and "permanent” amendments. The "permanent” change eliminated the exemption of national banks from taxes to which State banks were subject in the State where the national banks’ principal offices were located; this change, to go into effect on January 1, 1972 (Public Law No. 91-156, § 2, subds [a], [b]), subsequently was delayed until January 1, 1973 (Public Law No. 92-213, § 4, subd [a]; 85 US Stat 775).[2] The "temporary” one (Public Law No. 91-156, § 1) and a "saving provision” (§ 3) were (as amd by Public Law No. 92-213) to govern taxation of National banks during the transition period between December 24, 1969, the enactment date of the new law, and January 1, 1973.
It is on subdivision (a) of section 3 of the saving provision *430 that appellants rely.[3] They point out that, during the temporary period, that section protected national banks from losing any pre-existing immunity from State tax laws unless and until the Legislature of a State took "affirmative action” to apply such taxes to them. The banks also assert that the New York City commercial rent tax, which had been in force since 1963, when it was authorized by chapter 257 of the Laws of New York of that year, was neither newly enacted nor the object of the requisite "affirmative action” of the Legislature before the tax assessments in litigation here were levied. For its part, the city’s position is that its exercise of "affirmative action” is to be found in the passage by the New York State Legislature of chapter 166 of the Laws of 1970 which modified the original State law authorizing the rent tax, this though the 1970 enactment did not expressly refer to national banks.
Having fully considered these contentions, and, in the course of doing so, other pertinent provisions of Public Law No. 91-156 as well, we hold, on two independent grounds, that the rent tax was properly levied on the petitioners for the period in question.
Because the parties have preferred to focus on whether there was "affirmative action”, we initially discuss the effect of legislation by which the city’s commercial rent tax was amended to increase its rates significantly as of June, 1970 (L 1970, ch 166, amdg Administrative Code of City of New York, § L46-1.0, subd 3).[4] 5*We conclude that its passage constituted such action.
The banks seek to read into the Federal statute a requirement that, before imposition of State taxes on national banks, even though the levying statute is a general one, a conscious and explicit decision had to be made to subject these banks to the tax.[5] But the Federal statute contains no such require *431 ment. And, since even legislative decisions to allow existing rules of law to stand may be dynamic in their effect, where they bring meaningful increases in the rates of a revenue measure it is difficult to perceive how they can be regarded as anything but permeated with "action”.
Moreover, the mode of enacting amendments is to reenact the statute as amended much as a codicil republishes a will. It is a well-established proposition of law that an amendment is a re-enactment of the statute amended, albeit without any break in the continuity between the statute before amendment and the statute after amendment (see Lyon v Manhattan Ry. Co., 142 NY 298, 303-304). In fact, draftsmen of bills and other interested members of Legislatures, in considering bills providing for amendments, read them against existing law. And an amendment is enacted exactly like a wholly new statute. Thus, the amendment to the tax statute heré, passed by the New York State Legislature and signed by the Governor, necessarily involved "affirmative” conduct.
From the point of view of Congress, it was the possibility that inequitable or double taxation might be imposed immediately on national banks that was the crux of its concern. There was certainly nothing in the legislative history to suggest an intention to postpone taxation on national banks under general statutes like New York City’s commercial rent tax law. To the contrary, the saving provision was designed to avoid upsetting sophisticated, delicately balanced State statutes enacted to equalize taxation between bank and nonbank entities; the Congressional Managers’ Conference Report makes that most evident (1969 US Code, Congressional and Administrative News, vol 2, pp 1594, 1598-1599, 1602). Since any State legislative attempt to amend such a statute unavoidably would alert the Legislature to enactment of the new Federal statute, the saving provision therefore could be effected without requiring the States to mention national banks explicitly in amendatory tax legislation.
We, therefore, turn now to the other, and at least equally dispositive ground for our determination. It derives from subdivision (b), rather than subdivision (a), of section 3 of Public Law No. 91-156. Subdivision (b) of section 3 expressly *432 provides that the prohibition of (a) "does not apply to * * * any tax on tangible personal property * * * or for any license, registration, transfer, excise or other fee or tax imposed on the ownership, use or transfer of tangible personal property imposed by a State”. Such taxes are by its terms excused entirely from the requirement for either affirmative action or new enactment. For these excepted taxes, the "temporary” amendment of section 5219 allowed automatic imposition of nondiscriminatory State taxes without any further legislative input.
New York City’s commercial rent tax from its inception has been and continues to be regarded as one on tangible personal property. Judge (later Chief Judge) Fuld, in Ampco Printing-Advertisers’ Offset Corp. v City of New York (14 NY2d 11), spelled out the precise nature of the property interest of commercial tenants embraced by this local law. After describing the tax as one "imposed on a tenant of taxable premises according to his base rent for the tax year”, and noting that " 'tenant’ is defined as anyone who pays rent as lessee, sublessee, licensee or concessionaire”, he continues, more generally, " 'It is significant to note that nowhere in the Tax Law has the Legislature characterized a leasehold as taxable real property. Such omission is understandable, as a lease for years is deemed personalty [cases cited].’ * * * In any event, though, the tax could not be considered a tax on 'intangible’ personal property. A leasehold has consistently been regarded as tangible. (See, e.g., People ex rel. American Ice Co. v. State Bd. of Tax Comrs., 153 App. Div., 532, 539 [majority opinion], 541 [minority opinion], mod. 207 N. Y. 766 * * *.)” (Ampco Printing-Advertisers’ Offset Corp. v City of New York, 14 NY2d 11, 20, 21, 22, supra, app dsmd 379 US 5.)
The proposition that a leasehold constitutes tangible personal property for tax purposes has cut both ways. In the Ampco case, it resulted in validation of a tax liability; in Matter of Fort Hamilton Manor v Boyland (4 NY2d 192) and in Matter of Grumman Aircraft Eng. Corp. v Board of Assessors of Town of Riverhead (2 NY2d 500, 507, cert den 355 US 814) it led to mitigation or removal of a tax burden. Also pertinent, in light of subdivision (b) of section 3’s reference not only to "any tax on tangible personal property” but to an "excise * * * tax imposed on the ownership [or] use” of such property as well, is that, in Ampco (supra, at pp 21, 23), the court characterizes the tax here as an excise tax on the use of *433 property. (See, also, Matter of Penney Co. v Lewisohn, 40 AD2d 67, affd 33 NY2d 528; 2 Powell, Real Property, par 221, subd [2].)
The correctness of this conceptualization of a leasehold interest as tangible personal property in the context of Public Law No. 91-156 is underscored upon further research of that statute’s legislative history. Thus, while our attention has not been directed to any report separately discussing a State-imposed rent tax on facilities used by a national bank in the State where its principal office is located, we find it significant that subdivision (a) of section 1 explicitly validates such taxes when imposed by a State on a national bank whose principal office is in another jurisdiction. It does so, inter alia, by authorizing a tax on "the occupancy of real property” of such out-of-State national banks (Public Law No. 91-156, § 1, subd [a], amdg US Rev Stat, § 5219, subd 5 par [b], cl [2]).
Furthermore, referring to this amendment, the Senate Committee on Banking and Currency minced no words in reporting that "the taxes listed in the new section 5 (b) * * * are not considered to be taxes on intangible personal property as that term is used in the new section 5 (a), and they could be imposed on national banks by the States during the peiod up to January 1, 1972, as well as after that date” (US Sen Rep No. 91-530, 91st Cong, 1st Sess 3 [1969]; 1969 US Code, Congressional and Administrative News, vol 2, pp 1595-1596).
We do not regard this comment as any the less telling because it occurred in the course of an explanation of the effect of the amendment on taxes on out-of-State national banks, since the undeniable over-all design of the amendments to the then existing Federal legislative scheme was to give States expanded power to subject national banks headquartered within their borders to all nondiscriminatory taxes rather than to a limited "laundry list” (115 Congressional Record 19912 [1969]). There is consequently no reason to believe that the express equating of "occupancy of real property” with "tangible personal property” did not apply.
Accordingly, we conclude that Public Law No. 91-156 did not immunize petitioners from liability for New York City commercial rent taxes during the years at issue. It follows that the judgments from which the appeals are taken should each be affirmed.

. Correctness of the amounts assessed ($2,702,909.84 in petitioner Citibank’s case and $3,097,732.94 in that of petitioner Chase) does not appear to be in dispute.

. It is agreed that appellants have been subject to the New York City rent tax since that time and therefore this litigation encompasses no subsequent period.

. The pertinent text of subdivision (a) of section 3 of the Public Law No. 91-156 reads as follows:
"(a) * * * [P]rior to January 1, [1973], no tax may be imposed on any class of banks by or under authority of any State legislation in effect prior to the enactment of this Act unless
"(1) the tax was imposed on that class of banks prior to the enactment of this Act, or
"(2) the imposition of the tax is authorized by affirmative action of the State legislature after the enactment of this Act.”

. In a graduated scale, the rates were increased up to a maximum of 50% over the immediately pre-existing ones.

. While the city may not have gone through the formality of expressing an intent *431 to regard the amendment to the tax law as "affirmative action”, it had already made known its ongoing concern with the question of the tax’s continued viability in a letter submitted to the relevant Congressional Committee by a Representative who had authored remedial legislation (Testimony [on] HR 7491, pp 14-15).