KING COUNTY, WASH., et al. v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

(Circuit Court of Appeals, Ninth Circuit. September 5, 1922. Rehearing Denied October 9, 1922.)

No. 3851.

Taxation ⬤⇒5—United States Shipping Board Emergency Fleet Corporation's shipyard property held exempt from taxation.

Shipyard property of the United States Shipping Board Emergency Fleet Corporation, purchased by the corporation pursuant to and with funds appropriated by Act Nov. 4, 1918, § 1 (Comp. St. Ann. Supp. 1919,

§ 3115¹/₁₆ddd), are exempt from taxation by the state, in view of Act June 5, 1920, § 4, even though the legal title was in the corporation, a private corporation since the government caused the corporation to be formed, held all of its stock, furnished all of its capital, and owned the entire beneficial interest in its property.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit by the United States Shipping Board Emergency Fleet Corporation against King County, Wash., and others. Decree for plaintiff, and defendants appeal. Affirmed.

Malcolm Douglas, Pros. Atty., and Ewing D. Colvin, Deputy Pros. Atty., both of Seattle, Wash., for appellants.

Thomas P. Revelle, U. S. Atty., and John A. Frater, Asst. U. S. Atty., both of Seattle, Wash., and MacCormac Snow, of Portland, Or., for appellee.

Before MORROW and HUNT, Circuit Judges, and DIETRICH, District Judge.

DIETRICH, District Judge. This suit was brought to enjoin the collection of taxes levied in the years 1919 and 1921, by the officers of King county, Wash., upon shipyard property in that county purchased by the plaintiff, United States Shipping Board Emergency Fleet Corporation, on November 21, 1918. Holding in effect that the property belonged to the United States, and was therefore exempt from taxation, the court below overruled the defendants' motion to dismiss, and, upon their declination to plead further, entered a decree adjudging the taxes void and enjoining proceedings to collect. The appeal is by the county and its officers from this decree.

The status of the Fleet Corporation has had frequent consideration, and it is to be conceded that, in view of the decisions of the Supreme Court (The Lake Monroe, 250 U. S. 246, 39 Sup. Ct. 460, 63 L. Ed. 962, United States v. Strang, 254 U. S. 491, 41 Sup. Ct. 165, 65 L. Ed. 368, and more especially Sloan Shipyards Corporation et al. v. Fleet Corporation, 258 U. S. ——, 42 Sup. Ct. 386, 66 L. Ed. ——), the question here involved is reduced to narrow compass. As construed by both the majority and minority in this last case, the provisions of section 4 of the Act of June 5, 1920 (41 Stat. 988, 990), apparently operated to transfer the property in question from the Fleet Corporation to the Shipping Board, and it would seem to follow as of course that at least the 1921 tax claim is invalid, unless we go to the extent of holding that property of the United States in charge of one of its public boards is subject to state taxation.

But, putting aside that consideration, let us assume that the status of the property was the same in 1921 as in 1919. In that view the Fleet Corporation held the legal title, but the entire beneficial interest was in the government. The government caused the corporation to be formed, held all of its stock, and furnished all of its capital. It also supplied the funds with which the property in question was purchased.

That it was in the power of Congress to exempt property so ac-

quired and held from taxation admits of no doubt. As has been said in cases where public property and public interests were not so clearly involved:

"It follows then necessarily from these conclusions that the respective states would be wholly without power to levy any tax, either direct or indirect, upon the national banks, their property, assets or franchises, were it not for the permissive legislation of Congress." Owensboro Nat. Bank v. Owensboro, 173 U. S. 664, 668, 19 Sup. Ct. 537, 538 (43 L. Ed. 850); Smith v. Kansas City T. Co., 255 U. S. 180, 212, 41 Sup. Ct. 243, 65 L. Ed. 577.

It is, then, a question of legislative intent. Did Congress permit or intend to permit shipyard property so held to be locally taxed, under state authority? There is no expressed consent, and if we look for implied permission where are we to find it? If, taking a view most favorable to the defendants, but hardly warranted by the record, we assume the property was acquired with funds coming from the "sale" of the capital stock of the Fleet Corporation to the government, we would have a case where the government, for its own convenience and for the more expeditious dispatch of public business, instead of acting directly through a recognized governmental department, brings into existence a new agency in the form of a private corporation, which it controls, and in which it holds all of the stock, and to which it contributes its entire capital. With the unparalleled burdens of war, and with the growing problems of national taxation, is it probable or even credible that Congress intended to waive the government's right of exemption, and in effect to tax the entire country to discharge burdens of local state taxation?

Touching this question of legislative intent, the status of the Fleet Corporation, as defined in the decisions referred to, is of little, if any, significance. It is one thing for the government to constitute an agency for the convenient and expeditious transaction of its business, and to commit to such agency the control of certain public property, and to authorize it to contract and to sue and to be sued in relation thereto, but quite another thing to permit such property to be incumbered with burdens in the imposition of which neither it nor its agent has any part. For reasons of expediency it might be willing to be bound by the consequence of the voluntary acts or omissions of such an agent, of its own selection, and might be willing in effect to waive its right to immunity from suit by consenting that such agent be sued as its representative in respect to property and matters within the scope of its agency, and even that the property held by such agent be subject to execution process; but all that would fall far short of permitting, or disclosing a willingness to permit, such property to be subjected to taxation levied by representatives of an independent government.

As already intimated, it is not thought the question is foreclosed by the Sloan Shipyard decision. That case had to do with the intent of Congress upon another subject, the status of the corporation; but here we are concerned with the status of property and the intention of Congress in respect thereto. Exemption from suit and exemption from taxation are distinct prerogatives, and the waiver of one does not necessarily imply waiver of the other. It is to be borne in mind that it is not a case merely of a tax upon the property belonging to a designated

agency of the government; nor is it a case where Congress has made a grant of lands or an appropriation to a private individual or corporation in aid to the creation of a needed facility, in consideration of the right reserved to the government to require the use thereof for government purposes in certain stated contingencies.

In such cases the property whether originally owned by, or granted by the government to, private parties, belongs to them, and may be, and generally is, used by them for private gain. Subject to the qualification suggested, they have not only the legal, but the beneficial, title as well, and the contingent right or interest of the government does not substantially differentiate the status of the property from that of other property of the same general class. But here, admittedly, the property is not only held by a governmental agency, but was acquired with public funds, and was to be used exclusively for public purposes. To hold that it lost its public character, because the government chose to have the legal title taken in the name of a corporation, which it brought into existence and completely controls for its own convenience, and the entire capital stock of which it owns, would be to sacrifice substance to form. There is no suggestion that Congress ever contemplated the direct or indirect grant to private parties of any substantial right in the property, or the alienation by the government of any beneficial interest. Its understanding in that respect is clearly exemplified in section 4 of the Act of June 5, 1920, supra, where its unqualified right to dispose of property, without any action on the part of the corporation, and to transfer it to the Shipping Board, is assumed.

Furthermore, it appears that this property was purchased, not with money paid in for the capital stock of the Fleet Corporation, but with funds especially appropriated by Congress for the purpose, some time after the Fleet Corporation was fully organized. Power to acquire shipyards is not to be found in the act providing for the creation of the Fleet Corporation. The acquisition of such property was for the first time authorized by the Act of November 4, 1918 (40 Stat. 1022 [Comp. St. Ann. Supp. 1919, § 3115$^{1}$/$_{16}$ddd]), and an appropriation of $34,662,500 was made for that purpose. Clearly, in the matter of expending this public money, under the direction of Congress and the President, in the purchase of property for governmental purposes, and in taking and holding the legal title thereto, the corporation was acting as a naked trustee, and the entire beneficial interest was in the government. And what does it matter that the Fleet Corporation may, in a measure, have had the status of an ordinary corporation? Let us assume that it was purely a private concern, and originally had none of the attributes of a public agency, and then let us suppose that by Congress and the President, with its consent, public funds were placed in its custody, to be expended by it in the acquisition of shipyards for government uses, and it was authorized to take and hold the legal title thereto; would it be contended that such property continued to be subject to state taxation merely because the legal title was held by a private corporation having no real interest? The taxable character of property is to be referred to the status of the real, rather than of the nominal, owner. Private property is not exempt from tax-

ation because the government holds the legal title thereto, and by parity of reasoning neither is public property taxable because the naked legal title is in a private person. Carroll v. Safford, 3 How. 444, 11 L. Ed. 671; Witherspoon v. Duncan, 4 Wall. 210, 18 L. Ed. 339.

In principle the case is not unlike those cases where, for convenience, a state has created corporate bodies to hold property for and manage public educational and charitable institutions, and other governmental projects, and attempts have been made to tax property so held. Auditor General v. Regents, 83 Mich. 467, 47 N. W. 440, 10 L. R. A. 376; Tulane v. Board, 38 La. Ann. 296; Board of Trustees v. Champaign County, 76 Ill. 184; Reclam. Dis. v. Sacramento County, 134 Cal. 477, 66 Pac. 668; Board of Regents v. Hamilton, 28 Kan. 376; Herrick v. Sargent, 140 Iowa, 590, 117 N. W. 751, 132 Am. St. Rep. 330; New Haven v. Sheffield, 59 Conn. 163, 22 Atl. 156; State v. Westminster College, 175 Mo. 52, 74 S. W. 990; Commonwealth v. Pollitt (Ky.) 76 S. W. 412; Ellsworth College v. Emmett County, 156 Iowa, 52, 135 N. W. 594, 42 L. R. A. (N. S.) 530; Williston Seminary v. County Com., 147 Mass. 427, 18 N. E. 210.

Upon the whole, we are unable to find any substantial evidence of an intent to grant permission to tax, and accordingly the judgment will be affirmed. Costs to respondent.

Affirmed.