Campbell, Chief Justice,
rendered the opinion of the
court:
The plaintiff filed a motion to dismiss its case without prejudice to the bringing of another action. Its motion is as follows:
“ Comes now the claimant in the above-entitled cause and moves to dismiss this cause without prejudice to the filing of a new action. The ground of said motion is that prior to the filing of the petition herein the petitioner had not presented to the President of the United States nor to his authorized . agent the claim which is set out in the petition herein or any part thereof. The act of June 15, 1917, as interpreted by this court and the Supreme Court of the United States, provides that the President of the United States has authority to cancel such contracts as are set forth in the petition herein between petitioner and the United States, and said act further provides that whenever the United States shall cancel such contract it shall make just compensation therefor to be determined by the President, and if the amount so determined by the President is not satisfactory to the person entitled to receive the same, that then such person shall be paid 75 per cent of the amount so determined by the President and shall be entitled to sue the United States to recover such sum as added to said 75 per cent will make up such amount as will be just compensation. This act, therefore, requires that claims such as are embodied in the present petition be presented to the President of the United States or to his duty accredited agent and that the President or such agent should determine the amount of just compensation prior to the filing of a suit in this court on such claim. As said claim was not presented either to the President or to his duly accredited agent, and therefore not *665 acted upon, it follows that this court has no jurisdiction over this claim.
“ Petitioner, therefore, asks that this cause be dismissed without prejudice to the filing of a new suit covering the same subject matter.”
The petition was filed on the 15th of June, 1921, and nothing had been done in the case so far as the court docket discloses further than the entry by the clerk of the general traverse under the rules of the court. The plaintiff’s motion to dismiss was filed on April 11, 1923, and the defendant’s motion to set aside the general traverse and be allowed to plead was filed on the next day, April 12. These were sent to the law calendar and were heard together by the court on April 23, 1923. When the parties, by counsel, were heard in argument the plaintiff insisted it should be allowed to dismiss the case, and the defendant urged that the case be not dismissed and that the Government’s counterclaim should be filed. The court entered an order allowing plaintiff’s motion. A motion by the Government for a rehearing upon this motion was inadvertently overruled, but this action was vacated and the motion again set for hearing. This brought the entire question again before the court, and the question is upon the right of plaintiff to dismiss its action over the Government’s objection and its motion to file a counterclaim or demand against the plaintiff.
We think it quite clear that a plaintiff filing his petition against the Government in the Court of Claims has no absolute right to dismiss the case over the objection of the defendant. This results from the terms of the statute under which alone the Government submits itself to suit. In Sckillinger's case, 155 U. S. 163,166, it is said:
“ The United States can not be sued in their courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the liability of the Government is submitted to the courts for judicial determination. Beyond the letter of such consent the courts may not go, no matter how beneficial they may deem or in fact might be their possession of a larger jurisdiction over the liabilities of the Government.”
One of the “contingencies” here referred to is that the plaintiff may be confronted with some one or more of the *666 matters mentioned in the jurisdictional act (sec. 145, Judicial Code). This section confers jurisdiction to hear and determine, first, enumerated claims against the Government, and “ Second: All set-offs, counterclaims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court.” This language is comprehensive and embraces any demand that the Government has against a claimant in the court. Referring to this second paragraph of section 145, the Supreme Court, speaking through Mr. Justice Harlan in McElrath’s case, 102 U. S. 426, 440, say:
“ Suits against the Government in the Court of Claims, whether reference be had to the claimant’s demand, or to the defence, or to any set-off or counterclaim which the Government may assert, are not controlled by the seventh amendment. They are not suits at common law within its true meaning. The Government can not be sued except with its own consent. It can declare in what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits. It may restrict the jurisdiction of the court to a consideration of only certain classes of claims against the United States. Congress, by the act in question, informs the claimant that if he avails himself of the privilege of suing the Government in the special court organized for that purpose, he may be met with a set-off, counterclaim, or other demand of the Government, upon which judgment may go against him, without the intervention of a jury, if the court, upon the whole case, is of opinion that the Government is entitled to such judgment. If the claimant avails himself of the privilege thus granted, he must do so subject to the conditions annexed by the Government to the exercise of the privilege. Nothing more need be said on this subject.”
See also section 146 of the Judicial Code.
In view of the statute and the decisions of the Supreme Court, as well as those of this court, the most that a plaintiff can invoke upon his motion for an order of dismissal, objected to by the Government, is the exercise of a sound discretion by the court in the circumstances of the particular case. The question was carefully considered in Huske's case, 46 C. Cls. 35, where the plaintiff sought to discontinue *667 his suit, but before an order of discontinuance was made the Government filed its counterclaim. The court, in line with the decisions above cited, declared that when a claimant seeks the jurisdiction of this court for a judicial determination of his rights against the United States he subjects himself to the decision and determination of whatever claims the United States may have against him which may be properly pleaded by way of set-off, counterclaim, or claim for damages. It was further said (p. 39) :
“ But when a party invokes the jurisdiction to obtain a money judgment against the United States' he should know that if the Government has a counterclaim it is liable to be pleaded. For that matter, we may say, incidentally, it ought to be pleaded as promptly as possible. With definite notice that a counterclaim actually exists, plaintiff ought to be held to meet the Government demand without being permitted to hurriedly get out of court and thereby evade the consequences of that which he knows he should meet somewhere. It would be an abuse of the sound discretion of the court to permit discontinuance under such circumstances if the statute is to have its proper meaning and effect.”
There is nothing in the Atlantic Construction Co. ease, 35 C. Cls. 30, that militates against the conclusion in the Huske case. The latter points out the reason under the facts for the court’s action in the earlier case, and this earlier decision held that the question was within the sound discretion of the court. In the Huske case the motion to discontinue was overruled, and we think that the rule was there correctly announced and should be adhered to.
The plaintiff’s motion is set forth above. When it came to be heard the defendant opposed its allowance and apprised the court of the fact that there was a counterclaim, which the Government asked leave to file. The court only considered the question stated and submitted in the motion. An examination of it shows that the plaintiff’s petition asks relief on account of a number of transactions, a large part of which are not involved in the contracts alleged to have been canceled or attempted so to be. The petition avers that the five contracts were made by the Fleet Corporation “ representing the United States ” and in pursuance of the authority delegated to it by the President under specified acts *668 of Congress. It is repeatedly averred that the Fleet Corporation represented the United States. It is averred that on the 25th day of April, 1919, the contracts were canceled by the Fleet Corporation “ representing the United States.” It is averred in paragraph 14 that plaintiff expended large sums in anticipation-and belief that “ the defendant ” would in all respects comply with the terms of said contracts and that it was dispossessed of its plant and improvements thereto “ by the defendant.” It is averred that the Fleet Corporation “representing the United States” took over and removed large amounts of materials and that the alleged value thereof, many thousands of dollars, “ is now due petitioner by the defendant.”
It is alleged in paragraph 18 that the plaintiff built the fifteen vessels agreed to be built under one of the contracts and delivered them to the United States, “ and the United States, through its proper officers and agents, accepted ” them, but that the final payment due upon one of them, amounting to $184,500, was unjustfy withheld from and is now due to petitioner from the United States. In paragraph 19 are claims of more than $600,000 alleged to be due and owing by the defendant, it further appears that claim is made for work and labor done, for repairs made and for other items in large amounts which are claimed against the United States as the defendant in the suit.
The plaintiff invokes, among other things, the remedy provided by statute authorizing the suspension or cancellation of certain contracts. Act of June 15, 1917, 40 Stat. 183. This act provides for a liability of the Government. The averment of the petition is that the Fleet Corporation, representing the United States, ordered the cancellation of the contracts over the protest of plaintiff. Referring to this and other statutes amending it, 40 Stat. 535, 1022, it is averred in paragraph 6 of the petition as follows: “ In pursuance of the authority delegated as aforesaid to the United States Shipping Board Emergency Fleet Corporation by the President of the United States under the acts of Congress aforesaid, the said United States Shipping Board Emergency Fleet Corporation, representing the United States, and in behalf thereof entered into five certain contracts with *669 petitioner, said contracts being known as Supplemental Contract No. SC-10, and Contracts Nos. SC-175, SC-309, SC-324, and SC-447, all of which will be hereinafter more particularly referred to.”
Judgment is asked against the United States as defendant for a sum in excess of seventeen millions of dollars. Manifestly the petition on the face of it avers claims against the United States. What may be the legal effect of the failure to present claim to the President or the duly authorized board, as stated in plaintiff’s motion to dismiss, if such be the fact, it is not necessary to decide at this time. See Houston Goal Company case, 262 U. S. 361.
It is our view that the case of Sloan Shipyards et al, v. Fleet Corporation, 258 U S. 549, does not hold that the United States is not suable in this court on account of lawful transactions of the Fleet Corporation as the Government’s agent. The case does decide that the agent itself could be sued — in other words, that “ the agent, because he is agent, does not cease to be answerable for his acts.” But this is not to say that a principal not himself exempt from judicial process may not be sued. The general rule is that where a party who discloses his principal and is known to be acting as an agent enters as such into such a contract he is not liable thereon in the absence of his express agreement to be bound thereby. Whitney v. Wyman, 101 U. S. 392; Ford v. Williams, 21 How. 287, 289. The real question in the case mentioned was upon the right to sue the Fleet Corporation under the averments in the pleadings in that case. It is said (p. 567) : “ The plaintiffs are not suing the United States but the Fleet Corporation, and if its act was unlawful, even if they might have sued the United States, they are not cut off from a remedy against the agent that did the wrongful act.” See also Clallam County v. United States et al., 263 U. S., 341, citing, among other cases, King County v. Fleet Corporation, 282 Fed. 950.
Whatever right plaintiff may have had to sue the Fleet Corporation under the contracts the fact remains that suit was brought against the United States in this court, and we *670 do not think that the Sloan Shipyards case decides that such a suit can not be maintained.
The rule of court does not limit the filing of a counterclaim, set-off, or demand by the Government to sixty days. Eule 29 provides for demurrer or plea within sixty days after the petition is filed “ unless the court extend the time.” Eule 34 provides that in the absence of demurrer, plea, or answer, or notice of a counterclaim or demand, the general traverse shall be considered as entered, but the allowance of the filing of a counterclaim or other of the defensive matters contemplated by section 145, Judicial Code, has been uniformly held to be within the court’s discretion after the lapse of the sixty-day period. If it be said that the court has power to make rules of practice, it is yet true that it has not by its rules so limited the time of pleading the special defenses set forth in section 145 that such defenses may not thereafter be presented. In this connection section 175, Judicial Code, is of some moment.
The court has frequently rendered judgment dismissing a petition or reducing a recovery, in the absence of such a plea, where the facts developed an indebtedness or liability of the plaintiff.to the Government. See Wisconsin Central Railroad case, 164 U. S., 190; IIuse case, 222 U. S. 496; Extra Pay Cases (Spanish War). It may be conceded that without a proper plea or a,nswer setting up, or at least giving notice of, a counterclaim or other demand under the statute, there would be no sufficient basis for a judgment against a plaintiff for the excess of the counterclaim over the amount found to be due him. Shrewsbury case, 13 C. Cls. 183; Boughton case, 13 C. Cls. 284. But this consideration should not prevent the filing of a proper plea seeking affirmative relief when it is offered before evidence on either side is taken.
After considering the petition, the affidavits, and arguments adduced we are satisfied that the plaintiff’s motion to dismiss-should not have been allowed. That order will be vacated and another order entered overruling the motion to dismiss, and allowing the Government to file its counterclaim.
Graham, Judge; Hay, Judge; Downey, Judge; and Booth, Judge, concur.