THE SOUTHERN CROSS.

THE PAN AMERICA.

THE WESTERN WORLD.

Nos. A–15421, A–15433, A–15452.

District Court, E. D. New York.
Feb. 26, 1940.

550

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y., (William E. Collins, Sp. Asst. to U. S. Atty., of New York City, of counsel), for Roscoe H. Hupper, receiver.

John J. Bennett, Jr., Atty. Gen., (Francis T. Nolan and John T. Clancy, Asst. Attys. Gen., of counsel), for New York State Department of Labor (Division of Placement and Unemployment Insurance).

BYERS, District Judge.

Roscoe H. Hupper, who was appointed receiver in each of these causes by orders dated, respectively, June 6, 14, and 20, 1938, procured the judicial settlement and allowance of his accounts, and an order discharging him as receiver, dated July 29, 1939; paragraph 10 thereof contains the following: "10. Application may be made for further appropriate order or orders herein."

By petition and order to show cause herein, the receiver has asked for a decision and instruction respecting his rejection of three claims which were presented to him by the New York State Department of Labor (Division of Placement and Unemployment Insurance) as follows:

| A–15421 | $ 966.38 | |
| A–15433 | 1,079.69 | |
| A–15452 | 735.93 | $2,782.00 |

The foregoing were referred to in the receiver's final report dated May 31, 1939, with the statement that the receiver had declined to pay the claims on the ground that the receivership was exempt from the taxing provisions of the Social Security Act (42 U.S.C.A. § 301 et seq.) because it is "an instrumentality of the United States Government".

The report states that the matter had been referred to the New York District Counsel for the United States Maritime Commission.

Subsequent to the entry of the order discharging the receiver, that is to say, during September and October of 1939, decisions against the receiver were rendered by the Referees' Unit of the State of New York Department of Labor over the opposition of the District Counsel for the United States Maritime Commission, acting on behalf of the receiver and the United States, and appeals from those decisions were duly taken.

Apparently disposition of those appeals by the Unemployment Insurance Appeal Board awaits action by this court, in deference to the instant order to show cause, dated November 27, 1939.

Briefs from the Special Assistant to the United States Attorney, representing the receiver and the United States, and from the office of the Attorney General of the State of New York were received on February 14, 1940.

The question for decision is whether the receivership in each of these cases constituted an instrumentality of the United States Government which would be exempt from the state tax in question.

There can be no doubt that, if the United States Maritime Commission had operated the ships which were the subject of each of these proceedings, there would be no such tax payable. That Commission is the statutory successor to the United States Shipping Board, and its operations are rendered possible by congressional appropriation of funds from the United States Treasury. Merchant Marine Act of 1936, Title 46, U.S.C., §§ 1101, 1114, 46 U.S.C.A. §§ 1101, 1114. As to the predecessor corporation, see Johnson v. Fleet Corporation, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451.

In each of these causes, the libellant sought to foreclose a preferred ship's mortgage held by the United States of America, and sought the appointment of a receiver to operate the vessel pending such foreclosure and sale.

The application was contested by several interests, including the proctors for independent bondholders of the Munson Steamship Line, the registered owner (which was being conducted by trustees under the then section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207), and the opposition was held to be unavailing. See The Southern Cross, The Pan America, D.C., 24 F.Supp. 91, 1938 A.M.C. 1047. That decision was rendered on July 5, 1938, and the several orders appointing the receiver promptly ensued.

In each of them, it was provided, among other things, as follows: "(10) Ordered that such operation and all steps taken in connection therewith by said receiver shall be solely for the account of the libellant, and that libellant shall hold said vessel and her owners, and the said Trustees,

harmless from any and all liabilities in connection therewith."

It may be stated that the appointment of the receiver was urged upon the court by the United States as libellant, in part in response to telegrams from the Departments of State and Commerce directed to the Maritime Commission because of the national interest involved in the maintenance of ocean carrier service between this port and certain of those on the east coast of South America.

In order to induce the court to appoint a receiver, the Maritime Commission, in June of 1938, undertook the payment of the financial losses which were anticipated from his operation of these three vessels.

In the proceedings attending the settlement of the receiver's accounts and his discharge, it appeared that those undertakings were performed and substantial public funds had been expended in the maintenance of service which continued until the completion of the foreclosure of the preferred ship's mortgages, and the acquisition of the respective vessels by the United States at the sales held by the United States Marshal.

While the court appointed the receiver in the exercise of its powers as a court of admiralty, for the benefit of the United States and in response to the said representations, that was done upon the understanding, which was at no time questioned, that the then contemplated operation would be a source of expense to the United States Treasury within the competency of the Maritime Commission to incur.

It is clear that if the claims in question were to be approved by the receiver, they would have to be paid out of funds having their origin in the United States Treasury.

This is another way of observing that, if the claims were to be approved for payment, it would follow that the state of New York has the power to exact a charge against the federal Treasury for the exercise, on behalf of and for the benefit of the United States, of a governmental function, the sanction for which is found in congressional action.

Perhaps that result might follow from the provisions of Title 26 U.S.C. § 1606 as amended to take effect August 10, 1939, 26 U.S.C.A., Internal Revenue Code, § 1606, concerning which no present application is argued.

It is thought that enough has been written to disclose that these are not ordinary cases in which a receiver appointed by the court has operated property on behalf of a private litigant; from which it follows that the statute referred to in the case of Boteler v. Ingels, 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. ——, has no application to the claims here under consideration, and the same remark applies to Title 28, U.S.C., § 124, 28 U.S.C.A. § 124.

The cases relied upon by the Attorney General of New York have to do with receivers who functioned for the benefit of private litigants, and therefore a discussion of those cases has been omitted from this opinion.

The question of governmental exemption from local property taxes has been discussed in numerous cases, an early example of which is King County, Wash. v. United States Shipping Board E. F. Corp., 9 Cir., 282 F. 950. See, also, Clallam County v. United States, 263.U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328.

The action of the receiver in disallowing the claims is held to have been correct since his operations were in effect the exercise of a governmental function, and he is instructed to adhere to that position which is, as his petition points out, "actually for the benefit of the United States of America as represented by the United States Maritime Commission".

Settle order.